# CASES AT LAW

DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

NOVEMBER TERM, 1901.

THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JOHN YOUNG, PLAINTIFF IN ERROR.

Argued December 9, 1901—Decided January 20, 1902.

1. A statement of an accused person, offered by the state on the trial of an indictment as tending to prove guilt, must be preliminarily proved to have been made voluntarily. Whether it has been so made is to be determined by the trial court upon evidence adduced by the state and by the accused, if he offers any. Upon such preliminary examination that court is to find what facts are satisfactorily established and to apply the law thereto. If the finding of facts has evidence to support it, and the law applied is unobjectionable, the admission of such a statement is not reviewable on an ordinary writ of error.

2. When a convicted person elects to bring up with his writ of error the entire record of proceedings at the trial and specifies as a cause for relief or reversal that he has suffered manifest wrong or injury by the admission in evidence of a statement made by him, offered by the state and tending to prove guilt, the reviewing court must consider the evidence preliminarily laid before the trial court and its finding of facts thereon. If such evidence, though pertinent to support such finding, is insufficient in weight to justify the

finding it may be determined that wrong or injury has been done by its admission. *Quære*, whether this review is required where no such cause has been specified as required by section 137 of the Criminal Procedure act of 1898, and the case only shows an exception to the admission of the statement in evidence and an assignment of error thereon.

3. The question suggested not having been raised or argued is not decided, but *in favorem vitæ*, it is assumed that the objection to the admission in evidence of the statement requires a review of the evidence before the trial court in its preliminary examination, and such review having been made, the finding that the statement admitted was voluntary, was not only supported by evidence, but by such a preponderance of evidence that no other conclusion could have been reached.

4. There being a conflict in the evidence taken in the preliminary examination before the trial court in respect to the admissibility of defendant's statement, *quære*, whether that court can be required by the defendant to submit to the jury to decide whether such statement was admissible. The evidence in the whole case would justify the jury in finding that the plaintiff in error conspired and combined with three other persons to break into the house of Washington Hunter to rob him; that in pursuance of their conspiracy they went from New York to Burlington, where Hunter lived; two of them, at least, entered the house while plaintiff in error (the only one who knew Hunter or his house and premises) remained outside, but not far off; that in the conflict between Hunter and those who entered the house, Hunter was so injured that his death was caused thereby. After the trial court had carefully and clearly given to the jury the law respecting the guilt of one who, having combined with others to commit burglary or robbery was present aiding and abetting, and the provisions of our statutes to the effect that any person who, in committing or attempting to commit burglary or robbery, kills another, is guilty of murder, and that murder so committed is of the first degree, it was not error to charge as follows: "so there cannot be any other verdict *against* this defendant than that of murder in the first degree; the only other verdict must be not guilty."

———

On error to Burlington Oyer and Terminer.

For the plaintiff in error, *Charles K. Chambers* and *Eckard P. Budd.*

For the defendant in error, *Samuel A. Atkinson,* prosecutor of the pleas.

The opinion of the court was delivered by

MAGIE, CHANCELLOR.   The record brought before us on this writ of error shows an indictment presented by the grand jury of Burlington county against Charles Brown, Charles Miller, John Young and Otto Keller, for the murder of Washington Hunter in that county.

Upon the application of the prosecutor of the pleas, that court made an order of severance, and John Young, the plaintiff in error, was put upon his trial separately. By the verdict of the jury empaneled thereon, he was found guilty upon the indictment of murder in the first degree, and the sentence prescribed by our law upon such a verdict was duly passed upon him.

The writ of error was taken under the provisions of section 134 of the Criminal Procedure act of 1898 (*Pamph. L., p.* 866), which embodies the provisions of the act of March 12th, 1878 (*Pamph. L., p.* 80), under which such a writ of error as that before us has been supported, when the case shows that the Chancellor has refused to allow a writ out of the Supreme Court. *Kohl* v. *State,* 30 *Vroom* 195. It brings before us the entire record of the proceedings had upon the trial of the indictment pursuant to the provisions of section 136 of the Criminal Procedure act of 1898. By those provisions we are not only to review any errors of law brought to our attention by bills of exception, but also to determine whether from the record the plaintiff in error appears to have suffered manifest wrong or injury in the respects included in section 136. But by the provisions of section 137, the plaintiff in error is expressly required to specify the causes relied on for relief or reversal, and to serve such specification on the representative of the state.

The state of the case before us discloses no cause for relief or reversal specified by the plaintiff in error as required by the provisions of section 137. There are assignments of error upon the record, and bills of exceptions. Doubtless such assignments present for consideration any alleged errors of law thus pointed out. By a supplement to the then existing

Criminal Procedure act, approved May 9th, 1894 (*Gen. Stat.,* p. 1154, § 170), it was enacted that a plaintiff in error in any criminal cause might bring up with his writ of error the entire record of the proceedings upon the trial, and the reviewing court was expressly required to consider and adjudge upon such entire record, and to order a new trial if it appeared therefrom that the plaintiff in error had suffered manifest wrong in certain respects particularly stated in the act. There was, however, no provision in that legislation requiring the plaintiff in error to point out by assignments of error or specification of causes, the particulars in respect to which he claimed he had suffered wrong or injury. But while that legislation remained unaltered, this court, in dealing with a writ of error, the return to which presented the entire record of the proceedings at the trial, determined that in reviewing the admission of evidence which was the subject of a bill of exceptions, it would look at the entire record. *Roesel* v. *State,* 33 *Vroom* 216. The act of 1894 was repealed in 1898 (*Pamph. L.,* p. 934), and some (not all) of its provisions were re-enacted in section 136 of the Criminal Procedure act of 1898, *ubi supra.* The legislature thought proper to add the provisions of section 137, and thereby declared that when a plaintiff in error elected to take up the entire record, he should not be confined to his bill of exceptions or required to assign error thereon, but he was expressly directed to specify the causes relied on for relief or reversal, and to serve a copy thereof upon the representative of the state by a time fixed. It is to be observed that the legislature has not in express terms limited the consideration of the reviewing court to errors pointed out by bills of exception and assignment of error, or causes for relief or reversal specified in conformity with section 137, nor has it expressly provided that such causes shall be filed and made part of the record. But the clear implication is that the review is to be confined to matters of which the state is apprised either by assignment of error or specification of causes.

The argument in behalf of the plaintiff in error for a reversal of judgment is first and primarily put upon the third

assignment of error, which is based upon an exception, duly taken to the ruling of the trial court admitting in evidence a written statement made by plaintiff in error when in custody in the city of New York, under a charge of the crime in question. Before the ruling thus challenged was made, the bill of exceptions shows that the prosecutor for the state had taken the testimony of witnesses to the circumstances which preceded and accompanied the making and signing of the statement, and the plaintiff in error had called and examined Otto Keller, one of the defendants, and had offered himself as a witness and been admitted to testify in respect thereto. After this preliminary examination, the ruling brought in question by this exception was made.

The law applicable to the admission in evidence against persons charged with crime, of a confession of guilt, or of an admission of facts offered and tending to prove guilt, has been lately laid down by this court in the able and exhaustive opinion of Chief Justice Depue, delivered in the case of *Roesel* v. *State, ubi supra.* It is unnecessary, therefore, to discuss the principles on which such evidence is admitted, or the limitations of its admission. It is sufficient to indicate briefly the rules therein settled to be applicable.

To render admissible in evidence such a statement, it must be shown to have been made voluntarily, and the burden to show that it was thus made is upon the state. An admissible statement is one that is voluntary in the sense that it has not been induced by the pressure of fear or the influence of hope of some benefit to be derived therefrom in respect to the prosecution for the alleged crime. Whether the statement is voluntary in this sense is to be preliminarily determined by the trial court upon evidence adduced by the state and by the accused, if he offers any, and the question before that court is a mixed question of law and fact. The duty of the trial court is to find what facts are established to its satisfaction by the evidence adduced in the priliminary examination and to apply the law thereto, and thereon determine whether or not the confession or statement has been shown to have been voluntary in the sense in which the word is applicable to such

confessions or statements. If the facts found have evidence to support them, and the law applied is unobjectionable, an exception to a ruling admitting such confession or statement in evidence will not be reviewable on an ordinary writ of error.

In the case now under review, the trial court performed its duty with conspicuous care and fidelity. The state called and examined all the witnesses who were cognizant of the circumstances preceding the making of the statement by the accused; the stenographer who took the statement in shorthand as it was made and who reproduced it in typewriting, and those who were present while the statement was made and when it was signed. The accused was permitted to call and examine all the witnesses he desired. An examination of the evidence as before us in the bill of exceptions clearly shows that there was evidence upon which the conclusions of fact drawn by the court could be supported. As the application of law upon the facts found was plainly not erroneous, the admission of the statement in evidence would not be open to review upon an ordinary writ of error.

But the plaintiff in error elected to bring up with the writ of error the entire record of the proceedings had at the trial. Thereupon he had a right to require this court to consider and determine thereon whether it appeared that he had suffered manifest wrong or injury (among other things) in the admission of testimony. The testimony admitted was his own statement. It was admitted upon an adjudication of facts by the trial court. Although there was evidence upon which that adjudication could be supported, yet if that evidence, though pertinent, was insufficient to support the conclusions of the trial court, the plaintiff in error might well claim that he had suffered wrong or injury by the admission of the statement. If he had presented that question by a proper specification that he relied for relief or reversal upon that cause, we should have been bound to consider it.

Whether, under the provisions of sections 136 and 137, a court of review is restricted in its consideration to causes duly specified by the plaintiff in error, and whether an excep-

tion to the admission in evidence of a confession on such a case as that before us draws into review the propriety of the findings of fact by the trial court upon the evidence before it are questions which are not argued and which we do not deem necessary to decide. We have deemed it proper, *in favorem vitæ,* to assume without deciding that, under the present legislation, an exception duly taken to the admission of a confession in evidence may raise the question whether the conclusions of fact whereon the trial court acted were justified by the evidence taken in the preliminary examination in that court. We have therefore examined with care the whole evidence before us on that subject, with the result that we are satisfied that the conclusion reached by the trial court that the statement made and signed by the plaintiff in error was not adduced by fear or hope, was not only supported by evidence, but by such a weight and preponderance of evidence that no other conclusion could have been fairly reached.

The evidence in question may be considered, however, to have been in conflict. That given by plaintiff in error clearly showed that in making the statement he was not under the impression of fear. He, however, testified that before he made and signed the statement, he had been told by the chief of the detective bureau, in whose custody he was, that since Keller, one of those indicted with plaintiff in error, had made a statement, he (Young) had better make one, and that another officer had said to him before he signed the statement, "We only want to help you for your own good." If credit was given to him, it would be possible to infer that an inducement of hope was held out to him. But the evidence in contradiction, which came from many witnesses who sustained a severe cross-examination without showing any inconsistency of statement or raising any suspicion of falsification or perjury, and the circumstances established by uncontradicted proof, justified the trial court in rejecting as incredible the evidence of plaintiff in error on this subject. Still there was at least an apparent conflict. Under these circumstances, plaintiff in error asked the court to charge the jury that "if they found the evidence on which the confession was admitted

was in conflict, they must decide whether the confession was voluntary, and reject it if not found to be the voluntary act of plaintiff in error." The trial court did submit the question to the jury. If this course was erroneous, it would not avail plaintiff in error, both because it was taken upon his request, and because it could not do him any harm.

In submitting this question to the jury the trial court was doubtless influenced by an expression of Chief Justice Depue, in the Roesel case, in which he used this language: "If there be a conflict of evidence as to whether the confession was or was not voluntary, if the court decides that it is admissible, the question may be left to the jury, with the direction that they should reject it if, upon the whole evidence, they were satisfied that it was not the voluntary act of the defendant." *Roesel* v. *State, ubi supra.* This excerpt was taken in substance from the opinion of Chief Justice Fuller, in *Wilson* v. *United States,* 162 *U. S.* 613. It is, however, to be observed that, in the case thus cited in support of the practice indicated, the single question was whether the inculpating statement had been properly admitted by the trial court. There had been no submission, nor any request to submit, the admissibility of the evidence to the jury. Nor was the expression of the opinion to this effect called for in the Roesel case, for the court immediately proceeded to point out that the evidence taken in the preliminary examination before the trial court had not been in conflict. The present case does not require or permit a determination in respect to the course adopted below in submitting the question of the admissibility of the statement to the determination of the jury after it had been admitted by the court, but it is thought proper to state that we deem it still open to question whether, after the trial court has, upon a preliminary examination, admitted such a statement in evidence, it may be required to submit the same question to a jury, and whether, after such admission by the trial court, the function of the jury is not confined to a determination of the weight and credit of the statement admitted.

In a case more recently decided in this court it appeared that the trial court, after admitting in evidence a confession of the defendant, submitted the question to the jury, with the instruction that they must be satisfied that the confession was the voluntary act of the defendant. Chief Justice Depue again expressed approval of that practice. *Bullock* v. *State,* 36 *Vroom* 557. But the course of practice thus adopted had not been objected to, and obviously did no injury to the defendant. The propriety of the practice was therefore not presented for decision. It would seem that an authoritative decision thereon cannot be pronounced except upon a refusal of a trial court to submit to the jury, on defendant's request, the admissibility of a culpatory statement which the court had previously admitted in evidence.

Plaintiff in error, however, further objects that, in submitting the question to the jury, the trial court committed error or did him manifest wrong. This objection is before us by the general exception to the charge and an assignment of error. An examination of the charge shows that, in submitting to the jury the question, the court referred to the evidence, with careful instructions that it was to be decided by them, upon their own judgment, uninfluenced by the previous finding of the court. There was no error and no wrong done to plaintiff in error thereby.

The only remaining objection on the part of plaintiff in error is to that part of the charge of the trial court which dealt with the degree of crime of which the plaintiff in error should be convicted if he were found to be guilty. From our examination of the entire proceedings at the trial we think that the jury would have been warranted in finding the following facts established: Plaintiff in error had twice been in the employment of the deceased Hunter, and was familiar with his house and premises. After leaving that employment, he met and made the acquaintance of Keller, in a saloon in New York. He informed Keller that he had previously lived with Hunter, and that Hunter was in the habit of keeping money in his house to the amount of $2,000.

Keller afterward introduced the plaintiff in error to Brown and Miller, the other indicted persons, who were two New York crooks. These four persons agreed to go to Riverside, where Hunter lived, to rob him. In pursuance of their agreement, they arrived at Riverside in the night. From the station, when they left the train, they went, guided by plaintiff in error, to Hunter's place, and the house was pointed out to the others by plaintiff in error. He remained at some little distance from the house; the others proceeded towards the house, and two of them obtained an entrance thereto and assaulted Hunter, who, although an aged man, vigorously resisted them. In the struggle that followed Hunter was struck upon the head and cut with a chisel, used by one of those who had entered the house. The wounds thus inflicted occasioned the loss of much blood, which was, in the opinion of the medical witnesses, the cause of his death. Upon the case thus presented the trial court carefully instructed the jury that if the plaintiff in error had combined and conspired with the other indicted persons to break into Hunter's house and to rob him, and was present aiding and abetting those who entered the house for the purpose of robbing, he was equally guilty with them of the crime of burglary or attempted robbery. The charge in this respect is not criticised and is clearly free from any error.

The court then proceeded to instruct the jury in regard to the degree of crime of which plaintiff in error should be found guilty if the jury found that he took part in and was guilty of the crime of burglary or of attempted robbery. Their attention was drawn to the provisions of our statute which expressly declare that any person who, in committing or attempting to commit, burglary or robbery, kills another, such person is guilty of the crime of murder (*Crimes act of* 1898, § 106; *Pamph. L.* 1898, *p.* 824), and the further provision that murder committed in perpetrating burglary or robbery is murder in the first degree. *Crimes act of* 1898, § 107; *Pamph. L.* 1898, *ubi supra.* The trial court then charged that if the killing of Hunter was done in the committing of

a burglary or in the attempt to commit a robbery, those who were accomplices engaged in and chargeable with the burglary or the attempt at robbery, would all be guilty of murder in the first degree, as well those who broke into the house or laid violent hands on the deceased, as those who, though they were not within the house and struck no blow upon the victim, were present aiding and abetting the crime committed or attempted. The court then added: "So there cannot be any other verdict *against* this defendant than that of murder in the first degree, the only other verdict must be not guilty."

It is strenuously contended that this instruction was erroneous or did manifest wrong or injury to plaintiff in error in that it failed to take account of the actual power of the jury in such a case to return a verdict of guilty of murder in the second degree, or of manslaughter, or of assault and battery, or indeed, of any other crime. It is not contended that the instructions did not express with strict accuracy the provision of our law respecting the degree of crime in case of a conviction upon the circumstances appearing in this case. The contention is that, upon evidence justifying a conviction, the jury may find a verdict not such as the law expressly requires to be found upon such evidence, and that a judge errs who does not at least inform the jury that they may do so.

In the *Roesel case, ubi supra,* upon facts substantially like those here presented, a similar question was raised in this court upon an exception to a charge upon the respective functions of the court and jury in the trial of criminal cases. The prisoner's counsel in that case had contended that the jury was in such cases the judge both of law and fact. The trial judge refused to so instruct the jury, and on the contrary told them that "the law of the case you must take from the court." The case (in this court) was considered upon the assignment of error upon this instruction. That it involved the question here presented is shown by the charge in that case, which not only instructed the jury that if they convicted, then the verdict should be of murder in the first degree, but added that they could not find the defendant guilty of murder

in the second degree or of manslaughter.  After an exhaustive review of the law and practice, this court declared that the rule that a question of law is not for juries, applies to criminal as well as civil cases, and the instruction under review, which declares that the jury must take the law from the court, was approved.  As I dissented from the affirmance of the Roesel conviction, it is not improper to say that my dissent was upon another ground, and that I entirely concurred in the result reached respecting the functions of the court and jury on questions of law and questions of fact in criminal cases.

Upon the doctrine thus laid down, the instruction thus complained of was not erroneous.  Not being erroneous it did no manifest wrong or injury to the plaintiff in error within the meaning of our statute.  The proposition that a judge administering justice in criminal cases commits an error or does a wrong to the accused by failing to tell a jury that they may usurp the functions of the court, and may find a verdict unwarranted by the evidence, and in violation of their oaths, seems to me monstrous, and would lead to a perversion of justice.

An examination of the charge discloses some expressions on the part of the trial judge which might justify criticism, but I deem it unnecessary to discuss them, since if they are open to objection at all the defendant could not avail himself of it, because, even if erroneous, they are more favorable to him than they ought to have been.

The judgment must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, COLLINS, FORT, GARRETSON, HENDRICKSON, KRUEGER, ADAMS, VREDENBURGH, VOORHEES.  12.

*For reversal*—VROOM.  1.