THE STATE, DEFENDANT IN ERROR, v. GENNARO (OR GENARI) PALMIERI, ALIAS NAPOLITANO, PLAINTIFF IN ERROR.

Submitted April 25, 1919—Decided June 20, 1919.

1. Homicide by one engaged in perpetrating a robbery being made by statute murder in the first degree, the jury were properly charged that on such a state of facts, the verdict should be murder in the first degree, or defendant was entitled to an acquittal.

2. An instruction that under the act of 1916 (*Pamph. L.*, p. 576), the jury in rendering a verdict of murder in the first degree might recommend that the punishment be imprisonment for life, substantially states the effect of that statute.

3. The jury having asked and having received correct instructions on the propriety of recommending mercy in connection with a verdict of murder in the first degree, the court properly refused to repeat its prior instruction respecting a recommendation of life imprisonment.

4. The defence in a criminal case is not entitled to ask questions of a juror called to the book, no challenge being interposed, for the purpose of eliciting information on which to base a peremptory challenge. *Clifford* v. *State*, 61 *N. J. L.* 217, followed.

5. Whether duress is, under any circumstances, an excuse for crime, *quære*.

6. Evidence of threats made to defendant by a partner in crime, before and after the crime, *held*, incompetent for submission to the jury in connection with consideration of a recommendation of life imprisonment.

On error to Middlesex Oyer and Terminer.

For the plaintiff in error, *Theodore Strong*.

For the state, *Joseph E. Stricker*, prosecutor of the pleas.

The opinion of the court was delivered by

PARKER, J. The plaintiff in error, defendant below, was convicted of murder in the first degree, without any recommendation of life imprisonment as permitted by *Pamph. L.* 1916, p. 576. We are asked to reverse that conviction on several grounds.

The principal circumstances of the crime as brought out at the trial are that defendant and several others conspired in New York City to go to the farm of one Roman Smith, in the county of Middlesex, and rob him of his money. One of the conspirators named De Palma had lived on the farm and reported that Smith had $10,000, or some such sum. They went down to the farm prepared to perpetrate the robbery, but the presence of men and barking dogs seems to have deterred them and they returned. In a day or so several of them again visited the farm and bought some milk, and, probably finding the coast clear, came back the next day, all armed, went to the house where they found Smith's wife, he being in the field, handed her a dollar bill in payment for some more milk, and, as she was making change, attacked and bound her and beat her, and, as deceased was coming from the field to his wife's aid, he was attacked and shot by De Palma and then by defendant while he was on the ground. The criminals secured about $80 in money and left. These facts substantially appear by the testimony of the wife as to the attack on her, the confession of defendant, and his own testimony at the trial. Mrs. Smith was sixty years of age; her husband seventy. All of the party were indicted, but there was a severance, and plaintiff in error was tried alone.

The case is before us under section 136 of the Criminal Procedure act; and the first cause of reversal pressed is the third assigned "because the court charged the jury: Under the facts in this case your verdict will have to be, if you find that condition—I am not finding the facts—but if you find that condition I have stated, then your verdict can be nothing but either murder in the first degree, under the statute, or the defendant is entitled to an acquittal; and you are not responsible for the law." This is the language brought up by the third cause for reversal; counsel in his brief adds other language of the charge not so assigned, and which he is not entitled to have reviewed, but it is merely explanatory of that quoted, and is to the effect that if the four persons were aiding each other in the robbery, and to prevent detection or in-

terference, defendant or others killed Smith, they were all guilty of murder in the first degree.

The objection of counsel in his brief to these instructions (there was no oral argument) is somewhat obscure. If it is intended to challenge the instruction as to the character and degree of crime committed, it was manifestly correct. *Roesel* v. *State,* 62 *N. J. L.* 216, 223; *State* v. *Young,* 67 *Id.* 223, 233; *State* v. *Zeller,* 77 *Id.* 619. In cases where manslaughter is a tenable theory on the evidence, the charge should so declare (*State* v. *Herrmann, Id.* 534), but if there be no evidence to support such theory the rule is otherwise. *State* v. *Hernia,* 68 *Id.* 299; *State* v. *Pulley,* 82 *Id.* 579.

Under point 2, however, and, perhaps, under point 1, the charge is challenged as failing to include an instruction that with a verdict of first degree, the jury could couple a recommendation of imprisonment at hard labor for life. This seems to be argued in two ways—first, that the language brought up under cause 3 and quoted above, contained no allusion to the statute of 1916. The answer is that the provisions of that statute were explained to the jury in another part of the charge, and in such a way that the charge as a whole is in no way obnoxious to the objection of inconsistent or contradictory instructions. Secondly, that the language explanatory of the statute did not develop its full import, because the trial judge told the jury they could "recommend that the punishment be imprisonment for life" instead of saying in the words of the act "imprisonment at hard labor for life;" for peradventure (it is argued), the jury might spare life by recommending imprisonment at hard labor, when they would be unwilling to accept the alternative of imprisonment without hard labor. We are unable to perceive that any jury of presumably sensible men would be influenced by any such fanciful distinction. That imprisonment for life is imprisonment in the state prison, where hard labor is, of course, is settled. *Gibbs* v. *State,* 45 *N. J. L.* 379, 388; *State* v. *Ford,* 86 *Id.* 73. Counsel themselves made no distinction at the trial, but requested at one point a charge "that the jury could incorporate with their verdict of

first degree-a recommendation of imprisonment for life," and at another asked an instruction containing the same language, adding the words "at hard labor." If there was no distinction in the minds of counsel, it is safe to say there was none in those of the jury. We think there was no substantial distinction, and that the requests on this phase, in whatever form submitted, were substantially charged.

The next point relates to the instruction of the court respecting a recommendation of mercy by the jury. After being sent out, they returned into court, and submitted in writing the following question: "Can a verdict of first degree murder be rendered with a recommendation for mercy?" To this the court responded as follows:

"I understand by that that you mean any general recommendation for mercy, and not a modified verdict. My instruction to you is, that you cannot, or ought not, to render such a verdict, because the law fixes the penalty, and if you should convict of murder in the first degree and recommend that there be mercy, there is no way of enforcing it. The law has fixed the punishment, according as you render your verdict, and I have no power to make it any less, or exercise any mercy that the law does not confer on the court. If it was a case where I had some discretion; if it was a question whether a man should be sent to state prison for ten years or one year, then a recommendation for mercy could have some effect, because the court could pay attention to it. But in the case of murder in the first degree—that is what your question related to—the court has no power to modify what the law has said was the penalty. So, my reply to your question is, that a recommendation of mercy would not do a particle of good, and ought not to be made a part of your verdict."

Counsel discusses this at length, but we cannot find in the discussion any specific objection to the instruction as given; and in this aspect we deem it unexceptionable. The point, perhaps, intended to be made is identical with that numbered 4 in the brief and is this: When the judge had finished, counsel asked the court to instruct them that they could "incorporate with their verdict of first degree a recommendation

of imprisonment for life;" and the court refused at that stage, on the ground that the jury had been already instructed on that point, and that it was not responsive to the inquiry.

This was clearly correct. It is said that the court in its discretion should have added this—and that in the denial of this matter of discretion there was error reviewable under section 136 of the Criminal Procedure act. But this is not the "manifest wrong or injury" for which relief may be had under that section. The court had charged what was requested already, and in its proper place; and was merely answering categorically a specific question put by the jury. There was no occasion to go over the ground again.

In *State* v. *Herron,* 77 *N. J. L.* 523, even adverse comment on the evidence was held impregnable to attack on this ground. We conclude that the point is without substance.

Point 5 is, that the court erred in refusing to permit defendant's counsel to question jurors as to their views of capital punishment, without having challenged for cause. It is conceded that *Clifford* v. *State,* 61 *N. J. L.* 217, in this court, supports the action of the trial judge, and we are in effect asked to overrule that decision, on the authority of cases in other jurisdictions which have evidently departed from the salutary rules of the common law in this regard. A reading of the opinion in the Clifford case will demonstrate, we think, the soundness and propriety of the rule there enunciated by a unanimous court, and which we see no reason to question or criticise.

Point 6 is, that the court refused to permit defendant to prove that when he shot the deceased he was under duress. The effect of duress as a defence in a prosecution for crime does not seem to have been considered in any reported case in this state, and there is considerable divergence of judicial opinion elsewhere concerning it. 4 *Bl.* 30; 1 *Russ. Cr.* 17; *MacGrowther's Case,* 18 *St. Tr.* 391; 1 *Bish. New Cr. L.,* § 347; 21 *Cyc.* 832. We are not called upon to decide the fundamental question, because even where duress is recognized as a defence, the rule is substantially uniform that the com-

pulsion which will excuse a criminal act must be present, imminent and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the act is not done. 16 C. J. 91. It was not pretended that such a condition existed; the claim was that defendant under threats made in New York City went to the scene of the crime and participated therein, hours, if not days, after the threat, and with abundant opportunity to protect himself from danger.

It is suggested that this evidence would have been of value to the jury in dealing with the question of recommending life imprisonment. The answer is, that the court was not required to take evidence for the purpose of aiding the jury in deciding whether to make a recommendation (*State* v. *Martin,* 92 *N. J. L.* 436), and if the rule were otherwise, defendant was permitted, after the exclusion of testimony now attacked, to tell his entire story, including the threats and all relating thereto, the court overruling the state's motion to strike out such part of the testimony. So, that there is no really adverse action of the court on which to rest the argument.

Finally, complaint is made that the court excluded defendant's testimony of threats made to him by one or more of his associates after the crime was committed. We are unable to see the relevancy of this testimony; but, in any event, it came in shortly afterwards, and so defendant was in no way injured by the earlier action.

The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 13.

*For reversal*—None.