STATE *vs.* SALVATORE SACCOCCIO *et al.*

DECEMBER 4, 1929.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Barrows, and Murdock, JJ.

BARROWS, J. Salvatore Saccoccio, Charles Capace, Nazzarino Saccoccio, Ernest Silvio, Philip Gaglione and Antonio Pettinato were jointly indicted for murder. The last named has not been apprehended. The two first named pleaded guilty to murder in the second degree. The other three went to trial on pleas of not guilty and were found guilty "as charged in indictment." The indictment charged murder in the common law form and the proof established a homicide as a result of the use of a gun by one of several accomplices while carrying out premeditated robbery. Such killing was murder at common law. *Com. v. Devereaux*, 256 Mass. 387; *State v. Cross.* 72 Conn. 722. Our statute did not alter this. *State v. Fenik*, 45 R. I. 309.

Such murder whether intentional or otherwise, therefore, is murder in the first degree. 1 Wharton Crim. Law (11th ed.) ¶ 510, p. 699; *Com. v. Pemberton*, 118 Mass. 36.

Defendants Nazzarino Saccoccio, Ernest Silvio and Philip Gaglione are before us on thirty exceptions, which may be grouped as follows: (1) to rulings admitting or rejecting evidence; (2) to refusal of the trial court to grant a new trial because the verdict was against the evidence; (3) to refusal to charge concerning "degrees of homicide."

We have read the transcript with care. The case was tried by a court of wide experience in criminal matters and all rulings on evidence not only amply protected defendants' rights but show solicitude to give defendants the benefit of every presumption consistent with innocence. The jury was cautioned, not once but several times, that written confessions of Salvatore Saccoccio and Nazzarino Saccoccio furnished no evidence of the guilt of defendants Ernest Silvio and Philip Gaglione. The confessions themselves before being received were subject to closest scrutiny by the court and all persons connected with their procurement were subject to severe cross-examination by defendants' attorneys and by the court. All preliminary requirements for their admission were fully complied with. Not only was this so but the jury was carefully instructed and cautioned to scrutinize closely the confessions subsequently repudiated in whole or in part and the testimony of accomplices not on trial who had plead guilty to second degree murder. Cf. *State* v. *Riddell*, 38 R. I. 506. No error in discretion was made in permitting the State, taken by surprise by testimony of certain of its witnesses, to call these witnesses' attention to contradictory sworn statements formerly made. No merit exists in any exception to rulings on evidence.

Nor do we find the verdict unsupported by the evidence. A "hold up" of those who should be present at a certain time at a questionable resort kept by one Corbett in Warwick was planned by certain men. It was carried out by six of them at least three of whom carried arms. They went to Cor-

bett's in an automobile and caused a dozen to twenty people there present to "stick up" their hands between one and three a. m., on December 12, 1927. At least two of the six men "covered" the patrons of Corbett's place with a shot gun and revolver, taking from their persons money and valuables and ordering them to throw all valuables not so taken on a table. The robbers also took a slot machine. While the two who entered the house were inside, others of the robbers at least one of whom displayed a revolver stood at windows on the outside and Nazzarino Saccoccio stood by as the operator of the automobile owned by Gaglione in which the robbers went to Corbett's and in which they expected to escape. During the robbery a shot was fired by Capace, who admittedly was "covering" the victims with the shot gun. This shot hit Corbett in the abdomen and from that wound he died on the following day. Nazzarino Saccoccio admitted that he knew that firearms were taken in the automobile to Corbett's although denying knowledge of the purpose for which they were taken. He said he waited outside the house while the others went into or surrounded the building. Those who went in were masked. The shot gun was Gaglione's or had been lent to him. It was brought by the robbers from the house occupied by Gaglione and Capace. The place of rendezvous before and after the robbery was the house of a woman whose manner on the stand the trial justice says bore every appearance that she was not telling the truth on vital matters.

Concerted action to rob was established, as was the killing of Corbett while carrying out the robbery. The State offered evidence to show defendants planned and were present for the purpose of carrying out the robbery.

We have been much aided in our own study of the testimony by the detailed analysis of the testimony of various witnesses and of their bearing given by the trial justice at the hearing on defendants' motions for a new trial which were stenographically reported. The jury was amply warranted by the evidence in finding guilty as charged the three de-

fendants before us. The trial court was also convinced of their guilt and no error was made in denying the motions for a new trial on the ground that the verdict was not supported by the evidence.

The error of law chiefly relied upon by defendants was the refusal of the trial court to instruct the jury "on the possible verdict, the degrees of homicide" pursuant to G. L. 1923, Ch. 395, Sec. 1. It is true that in most cases where murder is charged instructions concerning its degrees are not only proper but necessary. There are cases, however, where such instruction is not required. 30 C. J. p. 404, ¶650. To ascertain whether these were such cases, the nature of the defences offered is important. When a defence is solely an alibi, instruction on murder in the second degree properly may be omitted. 30 C. J. p. 405. Silvio and Gaglione each based his whole defence on denial of presence when the crime was committed. Defendant Nazzarino Saccoccio admitted his presence at the time of killing and set up as a defence that he did not know when he drove the auto to Corbett's place or while he waited for the robbers what they were about to do and that when he heard the shots he ran away. If that was true he was not within the terms of the statute so far as it dealt with murder. He was not guilty of murder in any degree; if untrue, his crime of being present and participating in the robbery could have been no less than first degree murder. The jury was instructed to acquit him if it believed his story. Such instruction was proper. *State* v. *Palmieri*, 107 Atl. 407 (N. J.); *People* v. *Koerber*, N. Y. (Ct. of Appeals), 155 N. E. 79; *Com.* v. *Devereaux, supra.*

Omission, therefore, to charge regarding degrees of murder was not error unless our statute is to be construed as requiring such charge in all cases where defendant is being tried for murder. Defendants' claim that under the statute murder is defined as either of the first or second degree and that to the jury alone is given the right to find the degree; that, therefore the court is required to define to the jury the degrees of murder so that it may fulfill its function.

Under similar statutes in a few states courts have sustained such a contention. 30 C. J. p. 404, ¶650. Such interpretation of our statute we can not adopt. Our statute says that the jury may find the degrees of murder and expressly makes murder committed in the course of robbery murder in the first degree. The statute was not intended to leave the determination of the degree of murder in every case to the jury.

The reasonable construction is that such submission should not be made unless there be evidence in the case to support a finding of murder of lesser degree. The right given by the statute to the jury is not absolute to say that defendant is guilty of murder in the second degree if the facts proven show beyond possibility of dispute that the crime, if any, is murder in the first degree. This view is corroborated by the fact that the jury's right to find a lesser degree of murder under Chapter 395, Section 1, must be "in accordance with the provisions of section eleven of chapter four hundred seven of the general laws." The latter section reads (6305); "Whenever any person is tried upon a complaint or indictment and the court or jury, as the case may be, shall not be satisfied that he is guilty of the whole offense, but shall be satisfied that he is guilty of so much thereof as shall substantially amount to an offense of a lower nature". . . It is thus evident that the function of the jury was not by the statute enlarged into power to declare that to be murder in the second degree which the law definitely fixed as murder in the first degree.

In the *Fenik* case we said that the distinction between first and second degree murder lay in the extent of premeditation; that the evidence of defendant's lack of fixity of purpose if believed by the jury was sufficient to warrant a finding of lack of premeditation requisite to first degree murder and to reduce the killing from first to second degree murder. Hence that the jury should have been instructed on the difference between the degrees and under such instructions should be intrusted with the determination whether the offence was first or second degree murder.

In the present case that a homicide took place in the course of a robbery carried out as a result of concerted action was not open to question. That such homicide was murder was not disputed. A charge concerning degrees of murder would have been inapplicable to any facts or legitimate inferences which the jury could have drawn from facts in evidence. A charge to the jury must be applicable to the facts which have been presented before it in evidence. However correct a general statement of law may be, unless it be applicable to such facts it is rightly refused.

Applying the above principles in the case at bar the three defendants before us were either guilty of first degree murder or entitled to acquittal. Nothing in the evidence or to be inferred therefrom could have warranted a finding of second degree murder as in the *Fenik* case and instruction about degrees of murder would have been improper and confusing. 30 C. J. p. 401, ¶¶ 645, 646, 648. In *State v. Young*, (N. J.) 51 Atl. 939, the court says, at p. 943: "The proposition that a judge administering justice in criminal cases commits an error, or does a wrong to the accused, by failing to tell a jury that they may usurp the functions of the court, and may find a verdict unwarranted by the evidence, and in violation of their oaths, seems to be monstrous, and would lead to a perversion of justice." Under similar statutes a like conclusion was reached in *State v. Zeller*, 77 N. J. L. 619; *State v. Palmieri, supra; People v. Koerber, supra.*

There was no error in refusing defendant's request to charge the jury relative to the degrees of murder.

All of the defendants' exceptions are overruled and the case is remitted to the Superior Court for further proceedings.

*Louis V. Jackvony*, 2nd Asst. Atty, G., for State.
*George J. West*, for Philip Gaglione.
*Thomas J. McGauley*, for other defendants.