410 A.2d 121.

## IN RE LEON.

JANUARY 11, 1980.

PRESENT: Bevilacqua, C.J., Kelleher, Doris and Weisberger, JJ.

WEISBERGER, J.   This is an appeal from an adjudication of delinquency by a justice of the Family Court based upon conduct that would have constituted murder in the second degree if committed by an adult. The charges, equivalent to charges of common law murder, related to two victims, Frank Edward Young (Young) and Michael Fortes (Fortes), the former of whom had participated in and asssisted the respondent in an act of statutory burning in violation of G.L. 1956 (1969 Reenactment) §11-4-3. The other victim, Fortes, had apparently been a non-participating bystander.

The respondent does not specifically challenge the adjudication of guilt in respect to the charge of statutory burning,[1] but he does challenge the adjudication of guilt respecting the charges of second degree murder. The facts pertinent to this appeal are as follows.

On October 2, 1974, at about 5:30 p.m., respondent, together with another inmate of the Youth Correctional Center (YCC), entered the day room section of that unit. They armed themselves with a pool stick and pool balls and refused to accede to requests by supervisors to return to their quarters. At this point respondent and his original companion were joined by other inmates who armed themselves with mops, broom handles, and dust pans. Confronted with this militant array, the YCC staff members left the room in order to secure riot gear. During the absence

---

[1]The respondent's contentions regarding the intake procedures of the Family Court place in issue the ability of that court to decide any charge of delinquency against him.

of the staff, the inmates, including respondent, threw cushions into a corner of the day room behind a desk or counter. Thereupon, respondent and others set fire to the pile of cushions.

After the fire had started, a group of inmates barricaded the front entrance to the day room. The respondent and other inmates broke apart furniture and threw the pieces of furniture and other debris onto the fire. State police and the fire department were summoned. Meanwhile, the YCC staff attempted unsuccessfully to reenter the day room but were blocked by the barricade and were ultimately driven out of the building by heat and smoke. The Cranston Fire Department received the alarm at about 5:55 p.m. The state police units arrived at about 5:40 p.m., and the fire-fighting equipment arrived between 6 p.m. and 6:10 p.m.

The fire department personnel, equipped with masks and breathing devices, gained entry by a rear door. All inmates left or were rescued from the day room, except for Young and Fortes, who were removed by the fire department personnel but later died—Young as a result of burns and smoke inhalation and Fortes from smoke inhalation and aspiration of stomach contents.

In his brief, respondent raises five issues. The thrust of the second issue is that respondent was denied the right to a speedy trial, but at oral argument this issue was waived. Therefore, it is necessary to discuss it further.

The respondent first contends that he was denied his due process right to an impartial tribunal by the Family Court procedure under which the court's Intake Department, pursuant to G.L. 1956 (1969 Reenactment) §14-1-10, engages in a preliminary investigation "to determine whether the interests of the public or the child require that further action be taken, and * * * report[s] its findings together with a statement of the facts to the judge." The respondent argues that this preliminary investigation disqualifies any judge of the Family Court from participating in the adjudicatory

process. For this proposition respondent cites no authority save an unreported decision of the Family Court.

It is conceivable that a judge may become involved in a pretrial accusatory proceeding to such an extent that he would be lacking in the essential ingredient of impartiality needed to preside at a trial involving the same issues. Such a case was *In re Murchison*, 349 U.S. 133, 75 S. Ct. 623, 99 L. Ed. 942 (1955), where a Michigan judge who had served as a one-man grand jury preferred contempt charges against two persons who had appeared before him in his grand jury investigation. It was held that he could not impartially try the contempt charges which were based upon behavior that occurred before him in his grand juror capacity. The relatively innocuous Rhode Island procedures would scarcely inevitably lead to a similar result.

We do not believe that §14-1-10, considered on its face, requires the intake investigation to be conducted as a step in an accusatory proceeding. Although it may result in a determination to proceed with further investigation or with an adjudicative proceeding, the investigation by the Intake Department serves primarily to shield the child from arbitrary bureaucratic action and to forestall the Family Court from assuming jurisdiction when such would ill serve the interests of the juvenile and the public. *See In re Three Minor Children*, 110 R.I. 11, 15, 289 A.2d 434, 436 (1972) (in context of a neglect petition). In any event, counsel for respondent conceded at oral argument that the justice who heard this particular case had in no way participated in any preliminary investigation or accepted any report that related thereto. Thus we need not reach the question of whether contact by a justice with an intake investigation or materials developed therefrom could in a different context operate to deny a juvenile respondent's right to a fair and impartial tribunal.

Another issue raised by respondent is the correctness of the holding by the Family Court that a homicide committed in the course of a felony, other than those enumerated in G.L.

1956 (1969 Reenactment) §11-23-1, constitutes murder in the second degree.[2]

Murder in the second degree in Rhode Island has been equated with common law murder. *State* v. *Jefferds,* 89 R.I. 272, 280, 152, A.2d 231, 235 (1959); *State* v. *Hathaway,* 52 R.I. 492, 501-02, 161 A. 366, 369 (1932); *see State* v. *Miller,* 52 R.I. 440, 444, 161 A. 222, 224 (1932). At common law, it was stated as a general rule that a homicide committed in the course of a felony constituted murder. 4 Blackstone, *Commentaries on the Laws of England* *200-01. This sweeping definition was subsequently criticized, and while courts in England and the United States are not unanimous in respect to the rule, the present rule, where unchanged by statute, has been stated as follows:

> "Homicide is murder if the death results from the perpetration or attempted perpetration of an inherently dangerous felony." Perkins, *Criminal Law* 44 (2d ed. 1969).

This doctrine was recognized in *State* v. *Miller, supra,* wherein a defendant who was a participant in the commission of homicide in the course of an attempted prison escape was held to have been properly found guilty of murder in the second degree, even though escape was not one of the crimes set forth in the statute defining murder in the first degree. The respondent argues that *Miller* was wrongly decided. We disagree and reaffirm the holding in *Miller* as representative of the general common law rule as modified by more recent cases. *See generally* Perkins, *supra* at 37-41. In the case at bar, respondent committed a felony inherently dangerous to life when he, along with others, set fire to

---

[2]General Laws 1956 (1969 Reenactment)§11-23-1 has subsequently been amended to provide that an unlawful killing of a human being in the perpetration of statutory burning in violation of G.L. 1956 (1969 Reenactment) §11-4-3, constitutes murder in the first degree. P.L. 1979, ch. 178, §1. This amendment, having been enacted after the incidents here in issue, is not applicable to the case at bar. Similarly, P.L. 1974, ch. 118, §5, which also amended §11-23-1, is not material since it merely relates to the use of information charging.

furniture and other debris in the day room which was then occupied by a number of persons, including not only those who were aiding and abetting in the enterprise, but also certain inactive bystanders, one of whom died as a result of the fire. Therefore, the determination of the trial justice on this issue was legally correct.

The respondent also raises the issue of the propriety of applying the felony-murder rule in this instance in which the death of a co-felon resulted. This question is raised only in the case of the death of Young, who was an active participant in the setting of the fire and in the barricading of the day room; it is not contended that Fortes, for whose death respondent has also been found delinquent, was a co-felon. The precise question before us was considered in the case of *Commonwealth* v. *Bolish*, 391 Pa. 550, 138 A.2d 447, *cert. denied*, 357 U.S. 931, 78 S. Ct. 1376, 2 L. Ed. 2d 1373 (1958). In that case the defendant and co-felon had set fire to a vacant house. There was no direct evidence that the defendant had actually performed an affirmative act in setting the fire, but he had been present at the time of the explosion and fire which took the life of the accomplice, one Flynn.[3] In respect to the application of the felony-murder rule where death of an accomplice had resulted, the majority opinion observed:

> "The fact that the victim was an accomplice does not alter the situation, since the act which caused his death was in furtherance of the felony." 391 Pa. at 553, 138 A.2d at 449.[4]

---

[3]The crime charge in *Commonwealth* v. *Bolish*, 391 Pa. 550, 138 A.2d 447, *cert. denied*, 357 U.S. 931, 78 S. Ct. 1376, 2 L. Ed. 2d 1373 (1958), was murder in the first degree, since the burning of the dwelling house constituted arson, a felony that would support a charge of first degree murder under the applicable statute.

[4]A dissent written by Justice Musmanno in this case was based in part upon his drawing of a factual inference from the record that Bolish was not in or near the house when the explosion and fire took place. *Commonwealth* v. *Bolish*, 391 Pa. at 557, 138 A.2d at 451 (Musmanno, J., dissenting). There is no question in the instant case that the respondent actively engaged in the setting of the fire.

We agree with the conclusion of the Supreme Court of Pennsylvania that the fact that the victim was an accomplice to the felony does not prevent the defendant from being convicted of felony murder, so long as an act of the felon foreseeably produced the fatal injury. There seems to be no question in this case of proximate causation. The setting of the fire led inevitably to the foreseeable result that the victim died of burns and smoke inhalation.[5]

The defendant finally raises the issue of intervening and superseding cause. This issue is raised by his exceptions to the excluding by the trial court of evidence which would have been elicited to establish the following factors enunciated in respondent's brief: (1) the lack of training or planning for fire emergencies by the Rhode Island Training School staff, (2) the lack of fire-detection devices and fire-reporting devices at the YCC, (3) the lack of a sprinkler system at the YCC, (4) the length of time it took the Rhode Island Training School staff to locate and use a key to the outside gate to gain access to the rear of the YCC, (5) the delay in notifying the fire department after the blaze had started, and (6) the delayed rescue.

At the outset, it should be noted that in regard to items 4, 5, and 6, a considerable amount of evidence was actually admitted on both direct and cross-examination. It appears from the transcript that the training school staff did make efforts to enter the day room in time to be of assistance to the victims of the fire and to remove the persons who had set it.

---

[5]In *State* v. *SanAntonio*, 97 R.I. 48, 195 A.2d 538 (1963), we made a somewhat analogous ruling in a case arising out of an indictment for operating a motor vehicle on a public highway in reckless disregard of the safety of others, resulting in death. In that case the defendant raised the issue of the negligent conduct of the decedent which allegedly contributed to his death. We observed: "In fact it is universally held that whether the decedent's own reckless conduct contributed to his death is of no consequence so long as the evidence shows that the conduct of the accused was a proximate cause of such death." *Id.* at 53, 195 A.2d at 540. Although not dispositive of the issue raised by the defendant, this holding buttresses the persuasive force of *Commonwealth* v. *Bolish, supra.*

Nevertheless, the barricading of the front entrance, together with the heat and smoke, impeded these efforts significantly. The transcript further contains evidence that the fire began at some time after 5:30 p.m., and that the Cranston Fire Department responded to the fire with fire-fighting equipment and rescue units at about 6 p.m.[6]

In any event, assuming arguendo that the training school staff might have dealt with this emergency more efficiently, and that the Cranston Fire Department might have been summoned so as to respond more quickly, such assumptions would not be of assistance to this respondent. His contention is analogous to those raised in situations in which the victim of a violent act has sought medical treatment which is not rendered sufficiently promptly and efficiently to achieve an optimum result in the palliation or curing of his wounds. The general rule is set forth in *Perkins, supra* at 715-16, as follows:

> "An injury from which the victim bleeds to death is the proximate cause of the decease even if the loss of blood might have been stopped had medical aid been promptly obtained. Obviously the fact that a doctor was not at hand to render immediate aid cannot be regarded as a superseding cause; but the result is not dependent upon unavailability. 'The question is not what would have happened, but what did happen,'[7] and there can be no break in the legally-recognized chain of causation by reason of a possibility of intervention which did not take place, because a 'negative act' is never superseding. Moreover, an injury is the proximate cause of resulting death although the deceased would have recovered had he been treated by the most approved surgical methods,

---

[6]The sequence of events would strongly militate against any inference of lack of promptness in this response, in light of the somewhat chaotic nature of the initial emergency.

[7]"Beale, *The Proximate Consequences of an Act,* 33 Harv. L. Rev. 633, 638 (1920)." (Footnote in original, renumbered.)

or by more skillful methods, or 'with more prudent care,' or 'with a different diet and better nursing,' or 'with proper caution and attention.' "

In *State* v. *Gabriella*, 163 Iowa 297, 304, 144 N.W. 9, 12 (1913), the court asserted that "[l]ack of skill or bad judgment or mere negligence in any form on the part of the surgeon will not avail the slayer to protect him against the final consequences of his wrongful act."*See also Bailey* v. *State*, 22 Ala. App. 185, 186, 113 So. 830, 831-32 (1927);*People* v. *McGee*, 31 Cal. 2d 229, 243, 187 P.2d 706, 714-15 (1947); *Downing* v. *State*, 114 Ga. 30, 31-32, 39 S.E. 927, 927 (1901).

The foregoing authorities are persuasive in suggesting that proximate cause is not superseded, nor the act that produced it excused, by the failure on the part of those who might have assisted, cured, or rescued the victim to exercise a higher quality of skill or efficiency or a more appropriate response in the face of emergency when their actions might have favorably affected the result. *See generally Perkins, supra* at 706-34. We are of the opinion that the trial justice, to the extent that he did exclude evidence on the foregoing issues, was correct in so doing.

It may be appropriate in this context to observe that respondent here was adjudicated to be guilty of two charges of murder and one charge of statutory burning. In response to these charges, he was sentenced to the training school until he would be twenty-one years of age. In fact, respondent has long since been released from this facility and has now attained the age of twenty-one, so that he is no longer amenable to the jurisdiction of the Family Court. There is no question that the adjudication of delinquency on the charge of statutory burning, an adjudication which is not specifically challenged, is sufficient to support the concurrent sentence imposed in this case. It should be noted that respondent was over eighteen years of age on December 1, 1976, the date sentence was imposed, so that his total sentence, even if it had been served, would have been less

than three years. Under principles recognized by the Supreme Court of the United States, it has been held that when concurrent sentences have been imposed on multiple counts and when a conviction on one count is valid, appellate review of convictions on other counts is unnecessary. *Hirabayashi* v. *United States,* 320 U.S. 81, 85, 63 S. Ct. 1375, 1378, 87 L. Ed. 2d 1774, 1778 (1943); *Brooks* v. *United States,* 267 U.S. 432, 441, 45 S. Ct. 345, 347, 69 L. Ed. 699, 703 (1925). Nevertheless, because of possible, though not evident, collateral effects, we have considered the points of appeal relating to second degree murder on their merits. *See Benton* v. *Maryland,* 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). Still, we observe that in light of the charges underlying the adjudication of delinquency, respondent could scarcely complain of the severity of his treatment at the hands of the Family Court.

For the foregoing reasons, the appeal is denied and dismissed, the judgment of the Family Court is affirmed, and the papers in the case are remitted to the Family Court.

*Dennis J. Roberts II,* Attorney General, *Alfred French Goldstein,* Special Assistant Attorney General for petitioner.

*Charles Greenwood,* Rhode Island Legal Services, Inc. for respondent.