John TARVIS
v.
John MORAN.

No. 87–548–C.A.

Supreme Court of Rhode Island.

Dec. 22, 1988.

John Coughlin, Ciccone & Coughlin Law Associates, Providence, for plaintiff.

James E. O'Neil, Atty. Gen., Jeffrey J. Greer, Asst. Atty. Gen., for defendant.

## OPINION

SHEA, Justice.

This matter is before the Supreme Court on an appeal from a denial of an application for postconviction relief filed pursuant to G.L.1956 (1985 Reenactment) chapter 9.1 of title 10. We affirm.

In 1981 petitioner, John Tarvis (Tarvis), was convicted of first-degree murder and other crimes. The conviction was affirmed by this court in *State v. Tarvis*, 465 A.2d 164 (R.I.1983). Tarvis then sought federal habeas corpus relief that was denied by the Federal District Court of Rhode Island and the First Circuit Court of Appeals because he had not exhausted his state remedies.

In March of 1986 Tarvis filed an application for postconviction relief in the Superior Court. He alleged that he was twice denied his Sixth Amendment right to effective assistance of counsel. Tarvis claims

that his trial counsel failed to object with specificity to the trial judge's jury instruction on second-degree murder as required by Rule 30 of the Superior Court Rules of Criminal Procedure. He also claimed that his appellate counsel failed to raise the absence of a voluntary-manslaughter jury charge, which had been requested by trial counsel. The trial justice, in a written decision, denied the application for post-conviction relief. In this appeal Tarvis specifically declined to argue the issue of appellate counsel's failure to appeal the absence of a jury instruction on voluntary manslaughter. The only issue remaining before us is whether trial counsel provided effective assistance at trial.

The facts that resulted in Tarvis's conviction in 1981 are fully discussed in *State v. Tarvis*, 465 A.2d 164 (R.I.1983). The relevant facts for this appeal are the following. The trial counsel had requested a jury instruction on second-degree murder. He duly objected to the trial justice's failure to give the requested instruction. *Id.* at 169. However, because he did not articulate the specific grounds for this objection, we ruled that the issue was not preserved for review on appeal before this court. *Id.* at 170. Tarvis claims this error amounted to ineffective assistance of counsel depriving him of his right to a fair trial and due process of law as guaranteed by the United States Constitution and the Rhode Island Constitution.

In *Brown v. Moran*, 534 A.2d 180 (R.I. 1987), this court adopted the standard for reviewing a claim of ineffective assistance of counsel that had been set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct.2052, 80 L.Ed.2d 674 (1984). In *Strickland* the Court stated that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93. The Court set forth two criteria:

"First, the defendant must show that counsel's performance was deficient.

This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693.

In further defining the "deficiency" standard, the Court stated that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. In other words, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. The Court continued, "[b]ecause of the difficulties inherent in making the evaluation [of counsel], a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.

In this case Tarvis does not establish that the performance of the trial counsel fell below the reasonableness standard. At his trial Tarvis was represented by the deputy public defender, a respected attorney who has had more experience in criminal trials than most members of our trial bar. Tarvis's counsel made many reasonable strategic choices for his client during the trial, and it is our opinion that his strategy was not deficient. As was argued by the state, trial counsel filed many motions during the course of the trial, including a motion to dismiss the indictment owing to unnecessary delay and subsequent prejudice when one witness died; a motion for severance to distance Tarvis from his codefendant, Thomas Porraro; a motion for additional preemptory challenges; and a motion to sequester witnesses at trial. Counsel also elicited impeaching testimony from many of the state's witnesses. Further, counsel emphasized those portions of the testimony that distanced Tarvis from Porraro and rehabilitated Tarvis's character.

If trial counsel erred in not objecting with specificity to the first-degree murder instruction, as is asserted, we do not believe this caused prejudice to petitioner so as to deprive him of a fair trial. To meet his burden, Tarvis "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

We agree with the trial justice that "the defendant has not met his burden of proving that the alleged errors of * * * the trial * * * counsel effected the outcome of this case such that the outcome would have been different absent the errors." The trial justice was quite correct when he held that "even if the supreme court had addressed [the second-degree murder issue] on appeal, it would have found that under law decided by the Rhode Island Supreme Court * * * the second-degree murder charge * * * was [not] warranted in this case."

In *State v. Goff*, 107 R.I. 331, 267 A.2d 686 (1970), this court held that, in a murder case, a defendant is not entitled to a jury instruction on a lesser included offense "when the evidence would not sustain a finding of the lesser degree of the offense." *Id.* at 336, 267 A.2d at 688; *see also Sansone v. United States*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965) (if the evidence justifies, a defendant is entitled to a lesser-offense charge); *Jefferson v. State*, 472 A.2d 1200, 1203 (R.I.1984)("[i]t is a fundamental proposition that a defendant is only entitled to a charge on a lesser degree of homicide when the evidence would support a finding on a lesser degree of the offense"); and *State v. Cline*, 122 R.I. 297, 319, 405 A.2d 1192, 1204 (1979) (the court "has long followed the doctrine that instructions should not be given on

lesser degrees of murder or manslaughter unless there is evidence in the case to support such a finding")(citing *State v. Saccoccio,* 50 R.I. 356, 147 A. 878 (1929); *State v. Infantolino,* 116 R.I. 303, 355 A.2d 722 (1976) and *State v. Bradshaw,* 101 R.I. 233, 221 A.2d 815 (1966)).

General Laws 1956 (1981 Reenactment) § 11–23–1 provides:

> "Murder.—The unlawful killing of a human being with malice aforethought is murder. Every murder perpetrated by poison, lying in wait, or any other kind of wilful, deliberate, malicious and premeditated killing * * * or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed is murder in the first degree. Any other murder is murder in the second degree." [1]

This court has held that first-and-second-degree murder are distinguishable by evidence of the extent of a defendant's premeditation. *State v. Saccoccio,* 50 R.I. 356, 361, 147 A. 878, 880 (1929); *see also State v. Myers,* 115 R.I. 583, 591, 350 A.2d 611, 615 (1976) (because there was evidence that fatal gunshots were not fired until the decedent had time to turn around and run and because this was "more than a barely appreciable length of time," the defendant was not entitled to a second-degree-murder charge); *State v. Fenik,* 45 R.I. 309, 315, 121 A. 218, 221 (1923) (a murder rises to the level of first-degree if the premeditation lasts for "more than a barely appreciable length of time before the killing").

The record in this case clearly reveals that Tarvis premeditated the murder of Bruce Ottiano for several hours prior to the fatal shooting of Mary Wendolowski.[2] Thus he was not entitled to a second-degree-murder instruction. In the decision denying petitioner's relief, the trial court concluded, "The evidence adduced at trial was that the petitioner (and his codefendant, Thomas Porraro) had persistently searched for the intended victim, during which time he had made several stops at different locations, armed, and fired shots at locations where the intended victim was believed to be located." The trial court also found that "the defendant literally stalked the intended victim for a good portion of the evening."

Further, in *State v. Tarvis,* 465 A.2d at 171, we stated:

> "In the case before us, the crux of the state's case was that Porraro intended to kill Bruce Ottiano when he mistakenly shot Mary Wendolowski. Indeed, the evidence was overwhelming that Porraro formed such an intent soon after his defeat at the hands of Jody Petrarca.

> "Porraro expressed this intent to Bruce's sister, Gail, and then to Tarvis and Bourdeau. His actions in directing Bourdeau's driving of the car indicate that Porraro fired at the apartment in 470 Manton Avenue where he believed Bruce lived and was then present."

Tarvis's statements "[Porrarro's] in trouble * * * and if he has to go to jail, I'll go with him * * *," and "You know * * * they do that to one of the 'bros,' they got to go," *id.* at 167, further support the finding that Tarvis had the requisite intent and premeditation to raise his conviction to first-degree murder.

In his brief Tarvis wrongly argues that the facts of this case are comparable to the facts of *State v. Iovino,* 524 A.2d 556 (R.I. 1987). In *Iovino* the defendant was convicted of second-degree murder and assault with intent to murder after directing a series of shots into the West Warwick police station, ultimately causing the death of Thomas Cutler, a truck driver standing at

---

1. The statute in force at the time of petitioner's trial, G.L.1956 (1969 Reenactment) § 11–23–1, as amended by P.L.1980, ch. 247, § 3, was superseded by this 1981 reenactment. In all relevant aspects the statutes are identical.

2. The state tried Tarvis as an aider and abettor of the principal and codefendant, Thomas Porraro.

the front counter of the station. *Id.* at 557. This court found that the evidence showed that the defendant's conduct amounted to wanton recklessness raising the homocide to second-degree murder. *Id.* at 558. However, the trial court in *Iovino* found that the state did not produce any evidence that the defendant intended to kill the victim or anyone else. *Id.* at 557. In this case the state has provided ample evidence of intent to kill. Hence *Iovino* is distinguishable.

Similarly *State v. McGranahan*, 415 A.2d 1298 (R.I.1980); *In re Leon*, 122 R.I. 548, 410 A.2d 121 (1980); and *State v. Miller*, 52 R.I. 440, 161 A.2d 222 (1932), are distinguishable. In *State v. McGranahan*, where the defendant was found guilty of the second-degree murder of an infant, this court found that there was sufficient evidence to establish the defendant's premeditation or malice, 415 A.2d at 1301, but did not find the murder intentional. In *In re Leon*, a juvenile was found guilty of second-degree murder when he set fire to a room at the Youth Correctional Center that ultimately resulted in the death of two inmates. This court held that the deaths resulted from the commission of an inherently dangerous felony and thus constituted second-degree murder, 122 R.I. at 553–54, 410 A.2d at 124, but did not find that the respondent intended to murder the victims.[3] Finally, in *State v. Miller*, where the defendant was found guilty of the second-degree murder of a prison guard in an attempt to escape from prison, this court found that because the evidence regarding the defendant's premeditation and delibera-

tion was circumstantial, the jury could have found the defendant guilty of either first- or second-degree murder. 52 R.I. at 443, 161 A.2d at 224. In other words, this court found that a reasonable jury could disagree about the degree of intent and premeditation of a defendant. In the present case, however, because of the abundant evidence of Tarvis's and Porraro's search for and intent to murder Bruce Ottiano, we find *McGranahan*, *In re Leon*, and *Miller* distinguishable.

We agree with the trial court that a second-degree-murder instruction was not warranted in this case. There is no reasonable probability on the evidence presented that the jury would have found Tarvis guilty of second-degree murder. Therefore, he could not have been prejudiced by trial counsel's failure to object with specificity to the first-degree-murder jury instruction. After applying the *Strickland* standard, we conclude that Tarvis was not denied his constitutional right to effective assistance of counsel.

For the reasons stated, the appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.

---

**3.** General Laws 1956 (1969 Reenactment) § 11–23–1 has been amended to provide that a murder committed in the perpetration of an arson is first-degree murder. *See* P.L.1979, ch.

178, § 1. Because this amendment was enacted after the incidents at issue in *In re Leon*, 122 R.I. 548, 410 A.2d 121 (1980), it is not applicable to this situation.