## State of Vermont v. Ralph Ciocca

[ 225 A.2d 65 ]

October Term, 1966

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 6, 1966

Reargument Denied January 5, 1967

*Peter Forbes Langrock* for petitioner.

*Patrick J. Leahy,* State's Attorney and *Alan Cheever,* Assistant Attorney General for the State.

**Shangraw, J.** This is a petition for a new trial brought to this Court under the provisions of 12 V.S.A. §2354, and related §§2355 and 2356. Basically, the petitioner, Ralph Ciocca, seeks a new trial on the grounds of newly discovered evidence.

At the March Term, 1964, of Chittenden County Court, the petitioner was tried and convicted by a jury of an attempt to procure the burning of a building known as "Bob's Spaghetti House," located in South Burlington, Vermont, a violation of 13 V.S.A. §506. At this trial he was also charged with, and convicted of fourth degree arson involving the same building, a violation of 13 V.S.A. §505.

On appeal to this Court the convictions and judgments thereon were affirmed. *State of Vermont* v. *Ciocca,* 125 Vt. 64, 209 A.2d 507. Petitioner is now confined in the state prison at Windsor, Vermont.

As stated in the case of *State* v. *Brown,* 122 Vt. 59, 63, 163 A.2d 845, "The primary questions presented to this Court upon a petition for a new trial on the ground of newly discovered evidence

are, first, that such evidence is new, in that the petitioner did not know about it, and that such lack of knowledge was not by reason of lack of diligence on the part of the petitioner, and, second, that such new evidence is of such character as to give reasonable assurance that it will work a different result upon a retrial. Citing, *Kaeser* v. *Town of Starksboro,* 116 Vt. 389, 392, 77 A.2d 831; *State* v. *Baker,* 115 Vt. 94, 112, 53 A.2d 53. See *Dunbar* v. *Farnum & Wife,* 109 Vt. 313, 324, 196 Atl. 237.

■ In considering the question of whether such newly discovered evidence is such as to give reasonable assurance that it will produce a different result upon a retrial, we quote from *Doherty* v. *State of Vermont,* 73 Vt. 380, 389, 50 A. 1113:

> "In passing upon this question we must to some extent at least, place ourselves in the position of jurors: for it is for us to determine whether upon all the testimony in the case a jury upon another trial would arrive at another result from that expressed by the verdict upon the former trial."

The petition for a new trial is based in part upon the affidavit of Joseph Cabrera which reads:

> "I Joseph Cabrera of my own free will give this statement to Peter F. Langrock attorney for Ralph Ciocca.
>
> "At no time did Ralph Ciocca or any one acting on his behalf approach me with regard to burning down Bob's Speghetti (sic) House in South Burlington. Mr. Ciocca never came to my home at any time.
>
> "At the time of Mr. Ciocca's trial I was confined at the Charles Street Jail. If I had been able to testify at the trial I would have testified to the above facts. I would be willing to testify at any time before any person as to anything I know about the Ralph Ciocca case. In my opinion Ralph Ciocca is innocent.
>
> "The foregoing is the truth so help me God.
>
> "Dated at Windsor this 18th day of April 1966. Joseph Cabrera.
>
> "Subscribed to and sworn to before me this 18th day of April 1966. Peter Forbes Langrock. Notary Public."

In order that the significance of the affidavit be understood, we briefly refer to the evidence to which it relates.

Petitioner's grounds for a new trial is chiefly predicated on testimony given during the Ciocca trial concerning dealings had by the petitioner with Joseph W. Cabrera, wherein petitioner attempted to get Cabrera to burn down Bob's Spaghetti House. This evidence relates to testimony of Edmund Bessery and Robert E. Dragon, both of whom were called as witnesses by the prosecution during the Ciocca trial.

On November 10, 1963 Edmund Bessery visited with Leo Kirby at the latter's home. According to Bessery's testimony Ciocca told Bessery to ask Kirby to burn Bob's Spaghetti House, and to offer him $200 for doing it, because his insurance was going to run out on November 17th or 18th. Bessery's presence at the Kirby home on November 10, 1963 was confirmed by Kirby's wife, Madeline Kirby, and also his daughter Linda Bailey, and son-in-law John P. Bailey. Kirby reported the incident, and as a result a watch was placed on the building in question commencing November 13, 1963 by Lt. Lloyd Howard of the State Fire Marshal's Office.

The watch continued each evening until November 16th, when Lt. Howard and another officer observed two men, Roland Garceau and Bernard Woodmansee, commit overt acts, including the placing of inflammable material in the building, preparatory to and designed for setting a fire. Garceau and Woodmansee were each arrested.

Bessery testified that prior to November 16th, and a couple of days after the visit to the Kirby home, the petitioner took Bessery with him to find a person by the name of Joseph Cabrera in Winooski, Vermont. Bessery testified that the petitioner asked Cabrera how much he would charge to burn Bob's Spaghetti House. Cabrera said that it would be $500. Later, while Bessery was in Bernadini's restaurant, he saw the petitioner give Cabrera a white envelope with $250 and a key in it. Bessery also testified that he heard petitioner tell Cabrera, "Do a good job while you are at it, and Mr. Cabrera said, there will be nothing but ashes."

The transcript reveals that two or three days following the arrest of Woodmansee, Robert E. Dragon visited with Woodmansee in his apartment over Bernadini's restaurant. This restaurant was being operated by Ciocca at that time. Dragon testified that he went downstairs and talked with the petitioner. Following is a portion of Dragon's testimony relating to the conversation which took place at that time.

Q. What was the conversation you had with Mr. Ciocca, please?

A. I asked him for some money, and also to get bail for Roland Garceau.

Q. You asked him for money for bail for Roland Garceau?

A. Yes, sir.

Q. Who was the money for?

THE COURT. Let's keep to the conversation.

Q. (By Mr. Boylan) What other conversation did you have with Mr. Ciocca? What else did Mr. Ciocca say to you?

A. He told me that he had given the money to Joe Cabrera.

Q. He told you he had given money to Joe Cabrera?

A. Yes, sir.

Q. Did he say anything else to you?

A. No, sir.

Q. Did he say anything about Mr. Woodmansee and Mr. Garceau?

A. Well, he said he wished he would have know they were doing that, and he would have gone to them in the first place.

Q. He said that?

A. Yes, sir.

During the September Term, 1963, of the Chittenden County Court, Bernard Woodmansee was tried and convicted of burglary in the nighttime with intent to commit arson, a violation of 13 V.S.A. §1201, also attempted arson, a violation of 13 V.S.A. §509. On appeal to this Court the conviction of the violation of §1201, *supra*, was set aside and a new trial granted. The conviction of a violation of §509, *supra*, was affirmed. *State* v. *Woodmansee*, 124 Vt. 387, 205 A.2d 407. The charges and conviction arose out of the incident, namely the attempted burning of "Bob's Spaghetti House" on November 16, 1963, of which the petitioner stands convicted, and from which he now seeks a new trial.

In November, 1966 the petitioner's attorney, and the State's Attorney of Chittenden County, and the Assistant Attorney General of Vermont signed an "Agreed Statement of Facts" for consideration by this Court, in part reciting in substance: That Lieutenant Abare testified at the time of the Ciocca trial that he had a subpoena for Joseph Cabrera, but was unable to serve it; that Joseph W. Cabrera is a convicted felon; that Woodmansee was arrested on the 16th of

November, 1963, and was not released from jail until the 30th day of November, 1963; that Roland Garceau was arrested on the 16th day of November, 1963, and was still in jail on the 30th day of November, 1963; that Mr. Dragon testified that he was a convicted felon at the time of the Ciocca trial; and that Edmund Bessery had entered a plea of guilty to a charge of attempting to defraud certain insurance companies by an attempt to burn down Bob's Spaghetti House.

It was further stipulated that Bessery was charged with perjury as a result of his testimony in the Woodmansee case. The State made an entry of *Nolle prosequi* to that charge. Further, that Bessery on cross-examination was questioned in the Ciocca trial concerning that testimony as follows:

Q. Did you testify to the truth in the Woodmansee case?
A. Woodmansee case? I was threatened—
Q. Did you testify truthfully in the Woodmansee case?
A. No.
Q. What part did you lie about?
A. That I didn't go to Kirby's house.
   I was threatened.

It was further agreed in the statement of facts that Mr. Bessery testified at the time of Ralph Ciocca's trial as follows:

Q. Kindly tell the whole story Mr. Ciocca told you when he was in the car, when you and he were going to visit Mr. Kirby—just exactly what he wanted you to tell Mr. Kirby.
A. He told me to offer Kirby $200, and he offered me $200 to burn the Spaghetti House.

It was also agreed that on or about the 7th day of June, 1965, two charges were brought against Joseph Cabrera concerning his alleged participation in the attempted burning of Bob's Spaghetti House. Subsequently an entry of *Nolle prosequi* was made.

At the Woodmansee trial Leo Kirby testified that the offer made by Bessery for helping him burn down Bob's Spaghetti House was to split $4,000. As previously stated, at the Ciocca trial this witness testified that Bessery told him that "there was $400 in it and he would give me $200 . . . ."

In his petition, the petitioner places emphasis on the change in testimony of Kirby as above set forth. He calls attention to the

perjury of Bessery in the Woodmansee trial to the effect that he did not call on Kirby on November 10, 1963. Further, that at the time of the Ciocca trial Dragon had 27 months to serve at the State Prison on a conviction in Addison County of breaking and entering in the nighttime, and that he was released 61 days following the Ciocca trial. He also calls attention to the testimony of Dragon wherein he stated that "two maybe three days" after Mr. Woodmansee's arrest that he conversed with Woodmansee in an apartment above Bernadini's Restaurant, and then went down to the restaurant and there talked with Ciocca about getting bail for Roland Garceau, as related by Dragon's testimony quoted in this opinion. In that Woodmansee was not released from jail until the 30th day of November, 1963 petitioner claims that the testimony of Dragon given at the Ciocca trial must have been false.

Petitioner admits that the foregoing might not in themselves be grounds for granting a new trial. He claims that the obvious effect on a jury cannot be denied, and that these factors give strength to the probability of a different result on a retrial.

The State of Vermont has seen fit to allow pretrial discovery by a respondent in a criminal cause. This unique privilege is contained in 13 V.S.A. §6721. *State* v. *Mahoney,* 122 Vt. 456, 461, 462, 176 A.2d 747.

Apparently aware of the existence of the above statute, the respondent, Ciocca, made a motion on June 29, 1964, to take deposition of twenty-one persons. June 30, 1964, this motion was allowed under the provisions of §6721, *et seq. supra.* The order allowing the taking of the depositions, included, among others, Joseph Cabrera, Leo Kirby, Edmund Bessery and Bernard Woodmansee. Cabrera was then confined in the Charles Street Jail, in Boston, Mass. and remained there during the Ciocca trial. No attempt was made to take his deposition, even though such taking was authorized. Evidence which Ciocca might thereby have obtained thereunder is ineligible to be classified as "newly discovered."

Petitioner and Cabrera each testified in the Woodmansee trial, as did Bessery, Kirby, Garceau, and others. Woodmansee was tried during the 1963 September Term of Chittenden County Court. The information against Ciocca is dated January 31, 1964. His trial did not follow until July 20, 1964. This afforded petitioner ample time for the preparation of his defense.

■ The desirability of discrediting or rebutting the testimony of Bessery, Dragon, and Kirby could not have been overlooked in the preparation of Ciocca's defense. Had the petitioner decided to rely on Cabrera's testimony, this could have been easily accomplished within the procedure available to him before trial. Ciocca elected, for reasons of his own, to let the testimony of Bessery, Dragon, and Kirby stand undisputed before the jury and by his petition for a new trial he now seeks an opportunity for rebuttal. Having ignored Cabrera's knowledge of these matters, a new trial cannot now be granted on the strength of evidence which could have been made available by pre-trial discovery. See *State* v. *Sargood*, 80 Vt. 412, 415, 68 A. 51.

Chapter 203 of Title 13 of Vermont Statutes Annotated deals with "Evidence." By §6646 of Subchapter 2, Vermont adopted a uniform act to secure the attendance of witnesses from without the state in criminal causes. Cabrera was in Massachusetts at the time of the Ciocca trial. The Commonwealth of Massachusetts had also adopted a reciprocal act, M.G.L.A. c. 233, §13A, *et seq.* Again, the petitioner failed to take advantage of statutes and obtain the attendance of Cabrera at the trial.

■ The suggested testimony of Cabrera as disclosed by his affidavit and petition would only serve to impeach or contradict witnesses called by the State. As applied to criminal prosecutions, we quote from 39 Am. Jur. New Trial, §167, which states:

"It is well settled that a new trial will not be granted upon the ground of newly discovered evidence where it appears that such new evidence can have no other effect than to discredit the testimony of a witness at the original trial, contradict a witness's statements, or impeach a witness, unless the testimony of the witness who is sought to be impeached was so important to the issue, and the evidence impeaching the witness so strong and convincing, that a different result must necessarily follow.

A new trial was sought in the case of *State* v. *Manning*, 75 Vt. 185, 64 Atl. 181. It was therein held that a new trial will not be granted, even in a criminal case upon newly discovered evidence to impeach the general reputation for truth and veracity of one of the State's witnesses, when the impeaching and sustaining evidence are of about equal weight. Cabrera is an admitted felon, and is hardly to be considered a reliable witness.

It sufficiently appears that the petitioner had ample opportunity and statutory means to avail himself of Cabrera's deposition preparatory to trial, and his presence during trial. Ciocca failed to avail himself of the testimony of Cabrera, and he cannot now complain.

Furthermore, a careful examination of the evidence referred to in the affidavit and petition is not of such character, in our opinion, as would be likely to produce a different result if a new trial was ordered.

*Petition dismissed.*

## On Motion for Reargument

**Per Curiam.** After our opinion in the above case was filed, the petitioner presented a motion for leave to reargue, setting forth therein certain reasons on which he bases his contention that justice requires a reargument.

The motion does not contend that this Court overlooked or misapprehended any point of law or factual question presented in the petition for a new trial. In this respect the request for a rehearing fails to comply with Supreme Court Rule 22.

In effect, the petitioner by his request for reargument is seeking to introduce new matter without a supporting affidavit, which he failed to include in his original petition for a new trial.

Request for permission to reargue is denied.