366 A.2d 1158.

STATE *vs.* MITCHELL H. LANOUE.

DECEMBER 16, 1976.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher and Doris, JJ.

JOSLIN, J. In late 1971 and early 1972 the defendant, Mitchell H. Lanoue, pleaded nolo contendere in the Superior Court to three indictments, each charging him with uttering and publishing a false, fraudulent, altered and counterfeited check. He received a 5-year suspended sentence and 5 years probation on each of two of those indictments and entered into a deferred sentence agreement with the Attorney General on the third. Thereafter, on November 16, 1973, he was indicted for conspiracy to commit robbery and on the basis of that indictment was presented to the Superior Court for allegedly violating the terms and conditions of his probation and the deferred sentence agreement. After a hearing, the trial justice declared the defendant a violator, revoked his probation, imposed concurrent sentences of 15 months each on the two charges on which sentence had previously been suspended and continued him on the deferred sentence agreement on the third charge. Subsequently, in March and April of 1975, the defendant moved to vacate the sentences and

to reopen the violation hearing on the ground of newly discovered evidence. He appeals from the denial of those motions.[1]

At the outset, we observe that until recently a petition for a writ of error coram nobis was the appropriate procedure for raising a claim such as defendant's. *State* v. *Bettencourt*, 112 R.I. 706, 711, 315 A.2d 53, 55 (1974); *State* v. *Plante*, 109 R.I. 371, 374 n.2, 285 A.2d 395, 396 n.2 (1972); *Andrews* v. *Langlois*, 96 R.I. 461, 463, 194 A.2d 674, 675 (1963). Use of that writ for that purpose was abolished in 1974, however, together with other common law and statutory postconviction remedies, when the Post Conviction Remedy Act (the Act), G. L. 1956 (1969 Reenactment) ch. 9.1 of title 10, took effect. The Act now provides the exclusive remedy whereby "[a]ny person who has been * * * sentenced for * * * a violation of probationary or deferred sentence status * * *" may assert the claim "* * * that there exists evidence of material facts, not previously presented and heard, that requires vacation of the * * * sentence in the interest of justice * * *." Section 10-9.1-1 (a)(4). The substitution of one remedy for another, however, was a change in procedure only, not in substance, and the scope of review has in nowise been extended beyond the limits formerly permitted in coram nobis proceedings. *Harris* v. *Commonwealth*, 296 S.W.2d 700, 702 (Ky. 1956); *Rice* v. *Warden of Maryland Penitentiary*, 221 Md. 604, 156 A.2d 632 (1959).

---

[1]On April 29, 1975, the defendant filed another motion to vacate sentence on the ground that the prosecuting attorney had not complied with Super. R. Crim. P. 32(f), which requires that a defendant be given a written statement specifying the basis for the violation charge. That motion was also denied. Although the defendant appealed from that denial, he has neither briefed nor argued the Rule 32(f) issue in this court. We therefore consider the point waived and do not address it in this opinion. Sup. Ct. R. 16(a). Accordingly, the appeal from the denial of the April 29 motion is denied and dismissed pro forma to clear the record. *Pakuris* v. *Pakuris*, 95 R.I. 305, 306, 186 A.2d 719, 719 (1962).

Because the Act became effective on September 1, 1974, defendant's motions of March and April 1975 clearly were governed by it and should have followed the procedure provided therein.[2] His failure to resort to the appropriate process, however, is not necessarily fatal. If it were and we were to deny and dismiss the appeal at this juncture on that procedural ground, defendant presumably would simply renew his challenge in the Superior Court by exercising his right under §10-9.1-3 to file a properly labeled application "at any time." In these circumstances, rigid insistence on procedural formalisms would result in a waste of valuable judicial time and would needlessly prolong this litigation.[3] Consequently, we ignore defendant's failure to use the appropriate remedy, and we articulate his motions as if together they constitute an application for postconviction relief under the Act. See Walker v. Langlois, 104 R.I. 274, 275, 243 A.2d 733, 734 (1968).[4]

[2]General Laws 1956 (1969 Reenactment) §§10-9.1-3 to -4 require, inter alia, that an application for postconviction relief be verified by the applicant; that it set forth the grounds upon which it is based and clearly state the relief desired; that facts within the applicant's personal knowledge be set forth separately from other allegations of fact; and that affidavits, records, or other documents supporting the allegations be attached to the application or the application recite why they are not so attached.

[3]Our view on this point is supported by the ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Post-Conviction Remedies §6.1(d) (Approved Draft 1968), which states:
    "Because of the special importance of rights subject to vindication in post-conviction proceedings, courts should be reluctant to deny relief to meritorious claims on procedural grounds. In most instances of unmeritorious claims, the litigation will be simplified and expedited if the court reaches the underlying merits despite possible procedural flaws.

[4]In that case, the petitioner filed pro se a motion to vacate sentence in order to test the legality of his confinement under a Superior Court order revoking his probation and committing him to the Adult Correctional Institutions to serve a suspended sentence previously imposed. We ignored his failure to resort to the appropriate process and treated the motion as a petition for a writ of habeas corpus.

Turning to the merits, we begin with the observation that defendant's burden of proof is the same under the new procedure as it was under the old. Thus, relief is still conditional upon a showing that the newly discovered evidence relied upon measures up at least to the standards that govern in the determination of a motion for a new trial on the same ground. *Gross* v. *State*, 242 Ark. 142, 145, 412 S.W.2d 279, 282 (1967); *see Commonwealth* v. *Hawkins*, 445 Pa. 279, 281 n.2, 284 A.2d 730, 731 n.2 (1971). Those standards, as set forth in *State* v. *Carsetti*, 111 R.I. 642, 650-51, 306 A.2d 166, 171 (1973), are as follows:

> "The evidence must actually be newly discovered since the trial. The facts must indicate diligence on the part of a defendant to try to discover this evidence for use at the original trial. *State* v. *Buckley*, 104 R.I. 317, 244 A.2d 254 (1968); *State* v. *Sullivan*, 83 R.I. 1, 111 A.2d 838 (1955). The evidence must not be merely cumulative nor merely impeaching. *Carmara* v. *Rodrigues*, 74 R.I. 161, 59 A.2d 354 (1948). The evidence must be material to the issue. *Gorman* v. *Lambert*, 152 A. 319 (R.I. 1930). The new evidence would probably change the verdict at a new trial."

For us on review to determine whether the trial justice properly applied these standards necessarily requires a comparison of the evidence presented at the violation hearing with that proffered at the postconviction hearing. Without that comparison we obviously cannot ascertain, for example, whether the newly discovered evidence is merely cumulative or impeaching of that produced at the earlier hearing, or whether if presented at a new violation hearing it would probably alter the result. That comparison cannot be made in this case, however, because the record transmitted from the Superior Court does not include a transcript of the violation hearing. This omission makes effective appellate review impossible and therefore, without more, constitutes a sufficient basis for rejecting defendant's appeal.

Even were we to indulge defendant by accepting as a substitute for the missing transcript such of the trial justice's recollections of the violation hearing as are set forth in the postconviction hearing transcript, it would be of no assistance to him. That transcript discloses that at the violation hearing the state's principal witness, Donald Lawson, testified that he, defendant and one Anthony Fiore had planned a robbery during a conspiratorial meeting at Fiore's apartment. Notwithstanding defendant's testimony that he was not present at the meeting, the trial justice found Lawson to be a credible witness and therefore adjudged defendant a violator.

The newly discovered evidence proffered by defendant at the postconviction hearing was the testimony of Donald Houle, who was a coindictee with defendant on the charge of conspiracy to commit robbery. According to defendant's counsel, Houle was prepared to testify that he was present at a gathering at Fiore's apartment in October of 1973; that this was his only visit to that apartment; and that Lawson was there but defendant was not.

We are unable to perceive how Houle's proffered testimony aids defendant. True, it contradicts Lawson and corroborates defendant. Newly discovered evidence, however, if it is to qualify as a basis for recalling the revocation of probationary or deferred sentence status and vacating the imposition of sentence, must not be merely impeaching or cumulative. *State* v. *Carsetti, supra* at 651, 306 A.2d at 171. Houle's proffered testimony is both impeaching and cumulative and hence does not justify granting defendant the relief he seeks.

It has been said, however, that newly discovered evidence that is merely impeaching may warrant the grant of a new trial if the testimony of the witness sought to be impeached is so important to the issue, and that of the impeaching witness so strong and convincing or of such a conclusive

character, that it would necessarily lead to a different result. *State* v. *Ciocca*, 126 Vt. 184, 191, 225 A.2d 65, 70 (1966); *see Vickers* v. *Philip Carey Co.*, 49 Okla. 231, 245, 151 P. 1023, 1027 (1915). In practice, this principle seems to be applied primarily in the case of a newly discovered statement of the key witness himself that contradicts his own trial testimony. *See* Annot., 10 A.L.R.2d 381, 388 (1950). In any event, Houle's testimony hardly has the necessary force, and on this record it cannot be said that, if introduced at a new violation hearing, it would probably lead to a judgment in defendant's favor.

Finally, since Houle and the defendant were jointly indicted for conspiracy to commit robbery more than 6 weeks before the violation hearing, the defendant had ample opportunity to discover his coindictee's testimony prior to that hearing. In an attempt to show that such testimony could not by due diligence have been discovered at that time, the defendant relies on Houle's statement at the postconviction hearing to the effect that his attorney had instructed him not to discuss the case with anyone. There is, however, no showing that the defendant ever actually tried to obtain that testimony prior to the violation hearing. This hardly constitutes due diligence. In view of the defendant's knowledge of Houle's identity well before the violation hearing, his mere allegation that the testimony was unavailable is insufficient. Instead, he should have affirmatively shown that he genuinely attempted to obtain that testimony. *See State* v. *Sullivan*, 83 R.I. 1, 4, 111 A.2d 838, 840-41 (1955); *State* v. *De Cesare*, 64 R.I. 428, 12 A.2d 727 (1940). Thus, the newly discovered evidence does not justify granting the defendant the relief he seeks, not only because it is merely impeaching and cumulative, but also because there is no showing of due diligence on the defendant's part to obtain it for use at the violation hearing.

The defendant's appeal is denied and dismissed, the denial of the application for postconviction relief is affirmed, and the case is remitted to the Superior Court for further proceedings.

Mr. Justice Paolino did not participate.

*Julius C. Michaelson,* Attorney General, *Judith Romney Wegner,* Special Asst. Attorney General, for plaintiff.

*Salvatore L. Romano,* for defendant.