Leonard C. JEFFERSON

v.

STATE.

No. 81–238–C.A.

Supreme Court of Rhode Island.

March 2, 1984.

Leonard C. Jefferson, pro se.

Dennis J. Roberts II, Atty. Gen., Sharon P. O'Keefe, Sp. Asst. Atty. Gen., Chief, Appellate Div., for respondent.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal from a judgment denying postconviction relief sought on the basis of the petitioner's claim that the trial justice, in his rulings, committed errors that were prejudicial and deprived him of his right to a fair trial.

After due consideration and deliberation, the trial justice denied petitioner relief. He is now before us on appeal. In addition, petitioner seeks review of the trial justice's March 28, 1980 denial of his motion to assign for further oral testimony. We affirm.

The petitioner was convicted by a Superior Court jury of the murder of Virginio DeFusco, his seventy-nine year old landlord. He was sentenced to life imprisonment. The indictment returned charged petitioner with murder and robbery. However, the trial justice granted petitioner's motion for judgment of acquittal on the robbery charge. The petitioner's murder conviction was affirmed by this court in *State v. Jefferson*, 116 R.I. 124, 353 A.2d 190 (1976).

Evidence disclosed that on the evening of the murder, petitioner had been drinking with David Jones, a neighbor of petitioner's in the building in which he was living. During the course of the day they had consumed several pints of whiskey. Jones testified that while drinking together petitioner told him he was "going to rip the landlord off." The petitioner left Jones's apartment sometime after conveying this information to Jones. Jones testified that he then fell asleep but was awakened by the sound of scuffling or stomping in the

hallway. Jones left his apartment and went into the hallway where he saw petitioner kicking DeFusco at the bottom of the stairs. Jones returned to his apartment but shortly thereafter went back out into the hallway. The second time, he saw petitioner standing over DeFusco's body rummaging through some papers. The petitioner then ordered Jones downstairs where petitioner gave Jones $20 and told him to keep his mouth shut. Subsequently, petitioner and Jones left the house and went to an Elmwood Avenue liquor store where they purchased more liquor. An autopsy revealed that DeFusco's death resulted from a brain hemorrhage caused by a blunt trauma. The Medical Examiner testified that DeFusco's head injuries were consistent with those caused by kicks or punches. The petitioner complained of a swollen right hand shortly after his arrest. X-rays revealed a fracture. The petitioner told police he sustained the injury at work.

At trial, Pearl, Jones's common-law wife, testified that when she went out into the hallway that evening to bring in her cat, she saw DeFusco lying in a pool of blood at the foot of the stairs. She also testified that petitioner was standing only a few steps away. Pearl's brother Hawkins, also a tenant in the building, testified that when he went into the hallway, roughly an hour before DeFusco was murdered, he turned on a light switch near the stairway. The petitioner then appeared and shut off the lights, telling Hawkins he wanted things quiet because he had "something going."

We will now proceed to consider each of the issues raised by petitioner in his appeal of the Superior Court justice's denial of postconviction relief.

On appeal petitioner raises several questions: (1) whether his conviction for felony murder was a violation of double jeopardy or collateral estoppel; (2) whether the trial justice's supplemental charge to the jury was a violation of due process, prejudicing petitioner; (3) whether his conviction was in violation of the United States and Rhode Island Constitutions since it was allegedly based on testimony the prosecutor should have known to be false when presented; (4) whether he was denied his right to a fair trial by the failure of the Attorney General to look into the alleged perjury of three state witnesses pursuant to the trial justice's order in ruling upon petitioner's motion for a new trial; (5) whether there was sufficient evidence offered at trial to sustain the jury's verdict of guilty beyond a reasonable doubt; and (6) whether the racial composition of the grand jury that indicted petitioner violated his equal-protection rights under the United States Constitution. In addition, we will consider the trial justice's denial of petitioner's motion to assign for further oral testimony.

I

The petitioner claims that the Superior Court justice erred when ruling that the principles of double jeopardy and collateral estoppel were not pertinent to petitioner's conviction for felony murder. The petitioner was indicted for both robbery and murder. At trial, the trial justice granted petitioner's motion for judgment of acquittal on the robbery count. He then proceeded, however, to instruct the jury on felony murder. Specifically, he informed the jury that the unlawful killing of another in the course of an attempted robbery constitutes felony murder. He further instructed the jury on the elements of attempted robbery. The jury then found petitioner guilty of first-degree murder. The petitioner's claim is that having been acquitted on the robbery charge, he could not then have been found guilty of felony murder based upon the underlying felony of attempted robbery. The finding, petitioner claims, was in violation of double jeopardy and collateral-estoppel principles.

The trial justice's instruction was proper. Murder in the first degree is statutorily defined in G.L.1956 (1981 Reenactment) § 11–23–1 to include murder "committed in the perpetration of, or attempt to perpetrate any arson, * * * rape, burglary or robbery * * *." It is clear from a reading

of the statute that the attempt to commit any of the enumerated felonies may serve as a distinct underlying felony for invoking the felony-murder rule. Moreover, the fact that the prosecution failed to prove a case of robbery against petitioner did not preclude the state from making out a prima facie case of attempted robbery. Pursuant to G.L.1956 (1981 Reenactment) § 12–17–14,

> "[W]henever any person is tried upon an indictment, information, or complaint and the court or jury, as the case may be, shall not be satisfied that he is guilty of the whole offense but shall be satisfied that he is guilty of so much thereof as shall substantially amount to an offense, of a lower nature, or that the defendant did not complete the offense charged, but that he was guilty only of an attempt to commit the same, the court or jury may find him guilty of such lower offense or guilty of an attempt to commit the same * * *."

It is clear that under § 12–17–14 attempted robbery is a lesser-included offense within the crime of robbery. *State v. Saccoccio,* 50 R.I. 356, 361, 147 A. 878, 880 (1929); *State v. Shapiro,* 29 R.I. 133, 137, 69 A. 340, 342 (1908). Having shown this, it was not necessary for the state to prove every charge contained in the indictment but only to prove that the accused was guilty of a crime contained in the indictment even if it was the lesser-included offense of attempted robbery. The evidence was sufficient to support the jury instruction on attempted robbery.

The instant case is distinguishable from *State v. Innis,* 120 R.I. 641, 391 A.2d 1158 (1978), *rev'd on other grounds,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), *on remand,* 433 A.2d 646 (1981). In *Innis,* this court held that it was a violation of double jeopardy to sentence the defendant for the underlying felony of robbery where that felony also served as the predicate for his felony-murder conviction. 120 R.I. at 658, 391 A.2d at 1167. In the present case, petitioner is not being punished separately on the guilty finding of attempted robbery.

Rather, it serves as the underlying felony for his felony-murder conviction.

## II

The petitioner next argues that the trial justice's supplemental charge to the jury constituted reversible error. During jury deliberations, the jury foreman submitted two questions to the trial justice. The questions concerned the scope of the felony-murder rule. It is apparent from a reading of the questions that the jury was confused over the application of the felony-murder rule. Addressing the matters raised in the two questions, the trial justice gave his supplemental charge to the jury. The petitioner did not object to the charge at trial. The petitioner claims that despite his failure to object, the trial justice committed error in failing to inform the jury that they could find petitioner guilty of any lesser-included homicide offenses if they were to find that the homicide did not occur during an attempted robbery.

■ General Laws 1956 (1969 Reenactment) § 8–2–38 requires a trial justice in every case, civil or criminal, that is "tried in the [S]uperior [C]ourt with a jury, [to] * * instruct the jury in the law relating to the same * * *." It is a fundamental proposition that a defendant is only entitled to a charge on a lesser degree of homicide when the evidence would support a finding on a lesser degree of the offense. *State v. Goff,* 107 R.I. 331, 336, 267 A.2d 686, 688 (1970); *State v. Hathaway,* 52 R.I. 492, 502, 161 A. 366, 370 (1932). After reviewing the evidence adduced at trial, it must be concluded that the trial justice did not err in giving his supplemental charge by failing to charge on the lesser-included homicide offenses. There was no evidence offered to support a second-degree-murder or manslaughter charge. If the jury had not found petitioner guilty of first-degree murder, they would have had to find him not guilty.

■ Moreover, petitioner's failure to object to the charge at trial constitutes a

waiver and it thus precludes him from claiming error for the first time on appeal. Review is available, only when it can be shown that the alleged error rises to substantial constitutional dimensions and the failure to object is not an intentional tactical bypass. *Infantolino v. State,* R.I., 414 A.2d 793, 796 (1980); *State v. Roderick,* 121 R.I. 896, 898–99, 403 A.2d 1090, 1091–92 (1979). This is not the case in the appeal before us.

### III

 The third issue raised is whether petitioner's conviction was based on testimony the prosecutor knew or should have known to be false when presented, and thus was in violation of the United States and Rhode Island Constitutions. The petitioner's claim stems from a comment made by the trial justice in ruling upon petitioner's motion for a new trial. Specifically, the trial justice noted on the record that he was " * * * persuaded that there was perjury on the part of either Mr. Jones or perhaps all three witnesses."

The issue warrants little discussion since it was already decided by this court in petitioner's 1976 appeal. *See State v. Jefferson,* 116 R.I. 124, 353 A.2d 190 (1976). Briefly, this court concluded that the trial justice's inference was one he was free to draw in his role as "thirteenth juror" in deciding on petitioner's new-trial motion. *Id.* at 134, 353 A.2d at 196–97. Moreover, the perjury accusation was not in any way directed at the prosecution. *Id.* at 135, 353 A.2d at 197. Rather it was directed at Jones and possibly at Pearl and Ernest. Nor did any part of the alleged false testimony of any or all of these witnesses relate to petitioner. *Id.* The testimony referred to Jones's whereabouts at the time of the homicide, not petitioner's. *Id.*

### IV

Next, we consider whether petitioner was denied a fair hearing by the Attorney General's failure to investigate the alleged perjury of three state witnesses as ordered by the trial justice in ruling on the new-trial motion. Passing upon the testimony of Jones, Ralph, and Hawkins, the trial justice noted "I'm going to direct the Attorney General to obtain a transcript of the testimony in this case insofar as Mr. Jones is concerned, Mrs. Ralph and Mr. Hawkins, and after examination by the Attorney General, if need be, to bring the matter to the Grand Jury."

 As noted earlier, the trial justice commented that he believed that possibly as many as three of the state's witnesses had committed perjury. However, in considering a motion for a new trial, it is the trial justice's duty to weigh the evidence in the case, to draw inferences, and to pass upon the credibility of the witnesses. *Barbato v. Epstein,* 97 R.I. 191, 193, 196 A.2d 836, 837 (1964); *Cottrell v. Lally,* 94 R.I. 485, 489, 182 A.2d 302, 304 (1962). The trial justice was fulfilling this duty when he commented about the alleged perjury. *State v. Jefferson,* 116 R.I. 124, 134, 353 A.2d 190, 196–97 (1976). There is nothing that suggests that the trial justice's comment was anything more than an inference on his part. Clearly, the stating of the inference cannot be said to establish a prima facie case of perjury. Furthermore, even if we assume that the trial justice's conclusion could be proven and that Jones's whereabouts could be established, this information did not relate to petitioner. Thus, the failure of the Attorney General to investigate the alleged perjury cannot be said to have tainted petitioner's conviction and denied him a fair trial.

Article VII, sec. 12 of the Rhode Island Constitution provides that "the duties and powers of the secretary, attorney-general, and general treasurer, shall be the same under this Constitution as are now established, or as from time to time may be prescribed by law." In *State v. Rollins,* 116 R.I. 528, 533, 359 A.2d 315, 318 (1976), this court held that prosecutorial discretion is vested solely in the Attorney General. *See Suitor v. Nugent,* 98 R.I. 56, 60, 199 A.2d 722, 724 (1964). The Attorney General was validly exercising his prosecutorial discre-

tion in deciding not to investigate further and prosecute the alleged perjurers. Failing to see how the subject matter of the alleged perjury in any way related to petitioner, the Attorney General was not obligated to petitioner to prosecute or even to investigate further into the matter. Having already been tried and convicted when the Attorney General made his decision not to prosecute, petitioner cannot claim that his prior conviction was tainted by this subsequent decision.

## V

The petitioner next contends that scientific evidence may not form the basis for a jury's finding of guilty beyond a reasonable doubt. His argument is premised on the claim that scientific evidence served as the mainstay of the jury's finding.

■ This issue warrants little discussion since it too was dealt with by this court in *State v. Jefferson,* 116 R.I. 124, 353 A.2d 190 (1976). The petitioner argued on appeal that the evidence establishing his guilt was overwhelmingly circumstantial. *Id.* at 129, 353 A.2d at 194. Ruling upon petitioner's acquittal motion, this court applied the so-called circumstantial-evidence rule in considering the evidence adduced at trial. *Id.* The circumstantial-evidence rule requires that a finding of not guilty be entered where a reasonable hypothesis of innocence exists.[1] This court concluded that no such reasonable inference flowed from the evidence. *Id.* The petitioner is thus precluded from arguing that a portion of the circumstantial evidence offered against him, the scientific evidence, provided an insufficient basis on which the jury could rest their guilty finding. Clearly, there was an abundance of other circumstantial evidence that would support the jury's finding that petitioner murdered DeFusco while he attempted to rob him. *Id.* at 129–30, 353 A.2d at 194.

## VI

The petitioner maintains that the Superior Court justice erred in failing to quash the indictment upon which his conviction is based because there were overtones of racial discrimination inherent in the system used to select the grand-jury pool and its forepersons.

■ In *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), the United States Supreme Court held that "in order to show that an equal-protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs." *Id.* at 494, 97 S.Ct. at 1280, 51 L.Ed.2d at 510; *see Rose v. Mitchell,* 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979). It has been clearly established that a defendant bears the burden of establishing a prima facie case of discrimination in order to show that an equal-protection violation has occurred. *See Hernandez v. Texas,* 347 U.S. 475, 478–79, 74 S.Ct. 667, 671, 98 L.Ed. 866, 870–71 (1954). Once such a prima facie case is established, a presumption of discrimination arises and the burden then shifts to the state to rebut the presumption. *Castaneda v. Partida,* 430 U.S. at 495, 97 S.Ct. at 1280, 51 L.Ed.2d at 511.

■ The petitioner has failed to bear the burden of establishing a prima facie case of discrimination. There is no evidence that shows that the system used at the time of petitioner's indictment to select grand-jury pools and forepersons was contrived on racial grounds. Indeed, the testimony of the former jury commissioner for the State of Rhode Island, who testified at petitioner's postconviction-relief hearing, offered no such evidence. Having failed to present any evidence to support his allegation, we must necessarily conclude that petitioner's appeal on this issue lacks merit.

1. At the time that *Jefferson* was decided, the so-called "Montella" rule was in effect. *See State v. Montella,* 88 R.I. 469, 476, 149 A.2d 919, 922–23 (1959). *Jefferson* was decided prior to this court's decision in *State v. Roddy,* R.I., 401 A.2d 23 (1979).

### VII

Finally, we must consider whether the Superior Court justice erred in denying petitioner's motion to assign for further oral testimony. The petitioner sought to present expert scientific testimony regarding the analysis of textile fibers found on the victim's as well as his own clothing. Introduction of the evidence was sought under G.L.1956 (1969 Reenactment) § 10–9.1–1(a)(4), as enacted by P.L.1974, ch. 220, § 3, claiming that there was evidence of material facts, not previously heard, requiring the vacation of his conviction and sentence.

Applying the guidelines established by this court in *Danahey v. State,* 118 R.I. 268, 373 A.2d 489 (1977) and *State v. Lanoue,* 117 R.I. 342, 366 A.2d 1158 (1976), we conclude that the Superior Court justice did not abuse his discretion in denying the petitioner's motion to assign. In order to receive a grant of postconviction relief on the grounds of newly discovered evidence a defendant must establish two facts. First, he must show that the evidence was discovered after trial. Secondly, he must establish that its discovery could not have been made before or during trial through the exercise of ordinary diligence. *Danahey v. State,* 118 R.I. at 274, 373 A.2d at 491. The petitioner seeks to introduce evidence that questions the reliability of the scientific evidence offered at trial. The petitioner failed to show that the fiber-analysis technique he wishes to introduce was unavailable at the time of trial through the exercise of ordinary diligence. Even though the technique conceivably could have become more sophisticated since trial, such a finding alone will not suffice so as to fit within the *Danahey* guidelines. *Id.* at 274–75, 373 A.2d at 491–92. Newly discovered evidence is not admissible merely because it is impeaching or cumulative. *State v. Lanoue,* 117 R.I. at 346, 366 A.2d at 1161. Upon examination of the evidence in question, we must conclude that although it may be described as somewhat impeaching, the evidence does not rise to the level of newly discovered evidence that would require a new trial.

The petitioner's appeal is denied and dismissed, and the judgment of conviction is affirmed.