[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is an application for post-conviction relief filed pro se by Steven Parkhurst, pursuant to G.L. 1956 § 10-9.1-1(a) et seq. This Court considers the matter pursuant to Rhode Island Superior Court Rules of Practice 2.3(d)(4), as the trial justice is no longer a member of the Rhode Island Superior Court. For the reasons set forth herein, the application for post-conviction relief is denied.
 TRAVEL
On November 30, 1994, a Providence County jury convicted Steven Parkhurst (Parkhurst) of first-degree murder, conspiracy to commit murder, breaking into and entering a dwelling house, theft of a motor vehicle, theft of a firearm, and possession of a stolen firearm when committing a crime of violence (No. P1/93-2981AG). The Court, Bourcier,J., denied his motion for a new trial on December 16, 1994. On January 27, 1995, the Court sentenced Parkhurst to life imprisonment for the murder, ten years imprisonment each for the convictions of conspiracy to murder, breaking and entering of a residence, theft of a motor vehicle, and possession of a stolen firearm during the commission of a crime of violence, and five years imprisonment for the theft of a firearm. The Court ordered all sentences served consecutive to the sentence of life imprisonment and to each other. On January 20, 1998, the Rhode Island Supreme Court affirmed the judgment of conviction (C.A. No. 96-63).
Parkhurst filed an application for post-conviction relief on November 30, 1999. To represent him in the matter, the Court appointed four successive attorneys: Mark Smith, Therese Caron, Robert Craven, and Kenneth Vale. The Court permitted Attorney Smith to withdraw, with Parkhurst's consent. Attorney Caron declined the appointment because of her relationship to John Hardiman, Parkhurst's trial counsel. The Court, without objection from Parkhurst, also permitted Attorney Craven to withdraw.
The Court appointed Mr. Vale on October 8, 1999. On October 31, 2000, pursuant to procedure outlined in Shatney v. State, 755 A.2d 130 (R.I. 2000), Attorney Vale filed a motion to withdraw and an accompanying "no-merit" memorandum. After hearing, this Court, Clifton, J., granted Mr. Vale's motion to withdraw on November 27, 2000. The Rhode Island Supreme Court denied Parkhurst's petition for a writ of certiorari and motion for appointment of counsel on March 30, 2001.
Parkhurst continued to advance his application for post-conviction relief pro se. Granted leave to do so, he filed an amended petition on December 11, 2001. This Court held an evidentiary hearing concerning the matter on April 15, 2002. On April 30, 2002, Parkhurst filed a memorandum containing a closing statement in support of his application. The parties having briefed the issues and participated in an evidentiary hearing, this Court now renders a final decision on the merits of Parkhurst's application for post conviction relief.
 ANALYSIS
Parkhurst premises his application for post-conviction relief upon two independent grounds. He first argues his trial attorney, John Hardiman, provided ineffective assistance of counsel during the pre-trial phase of his representation. He next argues newly discovered and available evidence exists, sufficient to warrant a new trial. At the outset of his final memorandum, Mr. Parkhurst also renews his objection to proceeding pro se.
Objection to Proceeding Pro Se
At the outset of his final memorandum, Parkhurst restates his objection to proceeding pro se in his post-conviction relief application. He contends he is entitled to representation by an attorney, and proceeds in this matter under duress. This Court is inclined to consider that issue as being barred by principles of res judicata. Parkhurst's objection to proceeding pro se is presumably identical to the subject matter of the Rhode Island Supreme Court's Order dated March 30, 2001, which declined to appoint counsel or grant certiorari. Nevertheless, out of an abundance of caution this Court reconsiders and again overrules Parkhurst's objection.
In Shatney v. State, 755 A.2d 130 (2000), the Rhode Island Supreme Court articulated requirements for appointed counsel to withdraw in a post-conviction relief proceeding upon their assessment that the application has no arguable merit. To do so, appointed counsel must:
 "file with the court and serve upon the applicant a motion to withdraw accompanied by a `no-merit' memorandum [detailing] the nature and extent of his or her review of the case, [listing] each issue the applicant wished to raise, and [explaining] why in counsel's professional opinion those issues and any others that he or she may have investigated lacked merit. The court then must conduct a hearing with the applicant present. If, based upon its review of counsel's assessment of the potential grounds for seeking post-conviction relief and of any other issues that the applicant wishes to raise, the court agrees that those grounds appear to lack any arguable merit, then it shall permit counsel to withdraw and advise the applicant that he or she shall be required to proceed pro se, if he or she chooses to pursue the application." Shatney, 755 at 135.
Mr. Vale filed such a motion and memorandum with this Court on October 31, 1999. Over Parkhurst's objection, this Court granted Attorney Vale's motion to withdraw on November 27, 1999, advising Parkhurst that he would be required to proceed pro se.
Parkhurst argues that this Court followed flawed procedure in granting Attorney Vale's motion to withdraw. He maintains he was entitled to an evidentiary hearing concerning the motion to withdraw, and also entitled to be represented by an attorney at that hearing. Parkhurst cites Hughesv. State, 609 A.2d 943 (R.I. 1992), for the proposition that the merit of an ineffective assistance claim may only be determined by way of a hearing. He cites State v. Fontaine, 559 A.2d 622 (R.I. 1989), for the proposition that the credibility of newly discovered evidence may only be determined after an evidentiary hearing. Hughes and Fontaine, however, guarantee an evidentiary hearing before rendering a final decision on the merits. Neither guarantees an attorney and a hearing for the interlocutory motion to withdraw.
Mr. Parkhurst's arguments essentially attack the procedure set forth inShatney. This Court is not inclined to accept his proffered interpretation of right to counsel in post-conviction relief matters.
While this Court is mindful of questions of fundamental fairness, the right to counsel asserted by Mr. Parkhurst is a statutory creation. G.L. 1956 § 10-9.1-5. The United States Supreme Court described the nature of post-conviction relief proceedings and attendant right to counsel inPennsylvania v. Finley, 481 U.S. 551 (1987). The Finley Court clearly distinguished post-conviction relief from criminal proceedings, describing post-conviction relief as civil in nature, even further removed from the criminal trial than discretionary direct review:
 "It is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction. States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." Id.
In sum, Parkhurst's arguments are unavailing. In the instant case, the formalities set forth in Shatney are satisfied. This Court fulfilled the screening function described by the Shatney Court when considering Attorney Vale's motion to withdraw. Parkhurst's renewed objection to proceeding pro se is therefore overruled.
Ineffective Assistance of Counsel
The first ground asserted by Parkhurst in support of his post-conviction relief application is ineffective assistance of counsel. He maintains Attorney Hardiman's pre-trial conduct failed to satisfy standards of adequate representation set forth in Strickland v.Washington, 466 U.S. 668 (1984). Specifically, Parkhurst argues Attorney Hardiman erred in failing to conduct pretrial investigation of Codefendant Ryan Wright (Wright), and failing to conduct pretrial investigation of medical experts and evidence regarding the victim's manner and cause of death.
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction has two components. Id
at 687. The defendant must first show that counsel's performance was deficient. Id. The defendant must then show "counsel's errors were so serious as to deprive the defendant of a fair trial." Id at 688.
"[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id. "Judicial scrutiny of counsel's performance [is] highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id at 689. With these standards in mind, this Court examines the merits of Parkhurst's application for post-conviction relief.
At trial, the defense advanced the theory of an accidental shooting. The defense also raised Parkhurst's impaired judgment, as he labored under the effects of alcohol intoxication at the time of the crime. Parkhurst contended the gun accidentally went off in his hand, the unfortunate result of a "hair trigger." The defense accounted for violent trauma inflicted upon the victim's face by asserting Codefendant Ryan Wright beat their victim after the slaying.
Parkhurst argues Attorney Hardiman's pretrial preparation consisted of merely examining information provided by the State during discovery, consulting medical texts, and conferring with his client. He contends such efforts were insufficient to develop an adequate medical theory to support the defense's accident theory, and contradict the State's theory of premeditation. He notes Attorney Hardiman did not consult a toxicologist regarding effects of alcohol. He also notes Attorney Hardiman did not consult a medical expert regarding manner and cause of death, specifically the order in which the shooting and beating occurred. Parkhurst also objects to Attorney Hardiman's failure to offer alternate theories concerning trajectory of shots fired or the sequence of injuries.
Parkhurst maintains Attorney Hardiman's failure to procure contradictory medical testimony constitutes deficient performance, satisfying the first prong of the Strickland analysis. To show such deficiency deprived him of a fair trial, Strickland's second prong, Parkhurst relies on three questions posed to the trial justice by the jury. According to Parkhurst, those questions — wherein the jury asked Justice Bourcier: to distinguish between murder in the first degree, second degree and manslaughter; to explain the State's burden of proof; and to explain accomplice liability — "clearly [indicated] the jury was asking if [Parkhurst] was responsible for the actions of Ryan Wright." The failure to offer rebuttal medical testimony, Parkhurst argues, created a prejudice so severe as to deprive him of a fair trial.
Parkhurst's second ineffective assistance of counsel argument similarly invokes the jury's questions to the trial justice. Parkhurst interprets the questions to suggest the jury credited the defense theory of the case. He offers a 1998 statement of Ryan Wright wherein Wright claims to have beaten their victim only after Parkhurst accidentally shot him. Parkhurst argues these assertions demonstrate a prejudice to him so severe that he had been denied a fair trial.
The State objects to Parkhurst's petition, maintaining Attorney Hardiman zealously and competently represented Parkhurst. It argues Attorney Hardiman's failure to interview Ryan Wright cannot serve as a basis for the ineffective assistance claim. First, the State contends Ryan Wright's counsel refused permission to interview him; and second, that Attorney Hardiman testified he would not have put Wright on the stand as a tactical decision. Attorney Hardiman considered Wright's 1998 statements to have no significance concerning Parkhurst's culpability. To the contrary, he believed Wright's statements supported the State's theory of premeditation. Finally, the State argues such a tactical decision by Attorney Hardiman would be supported by evidence. Had Wright testified, alleging the scenario advanced in his 1998 statement, the State would have impeached him with a 1992 statement to State Police wherein he described beating their victim before Parkhurst shot him.
The State also argues that Parkhurst presents no evidence to support the allegation that Attorney Hardiman provided ineffective counsel by failing to consult medical, toxicological or ballistic experts. Accordingly, the State argues this allegation must also fail.
To prevail on an ineffective assistance allegation, Parkhurst must show both that Attorney Hardiman committed error, and that such error "clearly resulted from neglect or ignorance rather than informed, professional deliberation." State v. Dalo, 477 A.2d 89, 92 (R.I. 1984). Furthermore, "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."Strickland, 466 U.S. at 691.
After such analysis, this Court concludes Attorney Hardiman committed no error by not interviewing Ryan Wright. He did not disregard or overlook Wright's significance to the case. In an apparent effort to protect his client, Wright's counsel denied Attorney Hardiman permission to speak with him. Furthermore, Attorney Hardiman testified he would have declined to put Wright on the stand for tactical reasons. Such a tactical judgment appears to be well grounded in the circumstances of the case. Particularly relevant would be Wright's 1992 statement to State Police. Furthermore, Parkhurst's characterization of the questions posed to the trial justice is itself questionable. He fails to account for the great disparity between his interpretation of these questions and the jury's subsequent findings of fact and culpability. Accordingly, Attorney Hardiman's failure to interview Wright does not constitute error or deficient representation.
This Court similarly concludes Attorney Hardiman committed no error by failing to consult medical, toxicological or ballistic experts. "[I]n proceedings under [10-9.1-7] the petitioner generally bears the burden of proving his allegations by a preponderance of the evidence." Palmigianov. Mullen, 119 R.I. 363, 375, 377 A.2d 242, 248 (1977). Parkhurst offered no witnesses or documentation to establish how such experts would have assisted his defense. As such, the allegation relies solely upon Parkhurst's conjecture and must also fail.
Newly Discovered Evidence
Parkhurst's second asserted ground for post-conviction relief also relies on Ryan Wright's 1998 statements. He contends these are unsolicited statements which differ from accounts of the crime elicited at trial, and therefore must be considered newly discovered evidence, unavailable to him at trial due to the previously asserted ineffectiveness of Attorney Hardiman.
Parkhurst argues Wright's 1998 statements, taken together with the questions posed to the trial justice by the jury, would likely result in a different verdict at a new trial. The jury's questions, Parkhurst argues, show they wanted to know about the actions of Ryan Wright. Parkhurst contends these questions show Wright's actions weighed heavily on the minds of the jury. Had Wright testified in the vein of his 1998 statements, he argues, the elements of premeditation and malice aforethought could have been negated.
The State contends Parkhurst fails to meet his burden on the claim of newly discovered evidence. It characterizes Wright's 1998 statements as an eleventh hour attempt to exculpate his codefendant more than five years after their convictions, and describes them as unworthy of belief, void of credibility, and not of the type which would change the verdict at a new trial.
When addressing an application for post-conviction relief premised on newly discovered evidence, this Court applies the standard used for awarding a new trial. McMaugh v. State, 612 A.2d 725, 732 (R.I. 1992);Fontaine v. State, 602 A.2d 521, 524 (R.I. 1992); State v. Lanoue,117 R.I. 342, 346, 366 A.2d 1158, 1160 (1976). The proffered evidence must satisfy a threshold determination of whether it indeed constitutes newly discovered evidence. Id. In deciding whether the threshold test is satisfied, this Court must determine:
 "(1) if the newly discovered evidence actually is newly discovered or available only since the trial, (2) if the petitioner was diligent in attempting to discover the evidence for use at the original trial, (3) that the evidence is not merely cumulative or impeaching but is also material to the issue, and (4) that the evidence is of a kind that would probably change the verdict at a new trial." Id.
If the evidence meets the newly discovered evidence threshold, this Court then exercises independent judgment to determine "whether the evidence presented is credible enough to warrant relief." Id.
The State directs its attack towards the fourth prong of the threshold test. Parkhurst's argument similarly focuses on this prong, positing a scenario wherein the jury would credit Wright's version of events and accept the defense theory of an accidental killing and subsequent beating. Such is the theory advanced at trial, and rejected by the jury. That Wright would testify to the same scenario as Parkhurst does little to convince this Court that such testimony would likely result in a different verdict at a new trial. Accordingly, this Court concludes Ryan Wright's 1998 statements do not satisfy the threshold test for newly discovered evidence.
 CONCLUSION
For the reasons set forth herein, the petition for post-conviction relief is denied.